# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

MYA BATTON, AARON BOLTON,
MICHAEL BRACE, DO YEON IRENE KIM,
ANNA JAMES, JAMES MULLIS,
THEODORE BISBICOS, and STEVEN
EWALD, individually and on behalf of all
others similarly situated,

     Plaintiffs,

v.

COMPASS, INC.; EXP WORLD HOLDINGS,
INC.; REDFIN CORPORATION; WEICHERT
REAL ESTATE AFFILIATES, INC. d/b/a
WEICHERT REALTORS; and UNITED REAL
ESTATE HOLDINGS LLC d/b/a UNITED
REAL ESTATE GROUP,

     Defendants.

Case No. 1:23-cv-15618

Hon. Andrea Wood

# MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

FACTUAL ALLEGATIONS ....................................................................................1

ARGUMENT............................................................................................................4

I. Plaintiffs Lack Antitrust Standing Because More Directly Injured Parties, Home Sellers, Are Seeking the Same Injunctive Relief .......................................4

II. The Court Lacks Personal Jurisdiction Over Defendants for the Claims Brought by Named Plaintiffs as Required by Fed. R. Civ. P. 12(b)(2) .................4

III. Plaintiffs' Federal And State Antitrust Claims Fail Because The Complaint Does Not Plausibly Allege Any Agreement, Anticompetitive Or Otherwise.........................................................................................................9

    A. Plaintiffs Do Not Plausibly Allege Any Anticompetitive Agreement Between Defendants And NAR ...........................................11

    B. Plaintiffs Do Not Plausibly Allege Any Agreement Between Defendants Or Any Other Direct Competitor ........................................14

    C. Plaintiffs' Conclusory "Group Pleading" Allegations Are Inadequate ...........................................................................................16

IV. Plaintiffs' State Law Claims Are Time Barred ....................................................18

    A. The "Continuing Violation" Doctrine Does Not Save Plaintiffs' Claims................................................................................................19

    B. Plaintiffs' Claims Are Not Tolled ..................................................................20

        1. Dismissal On Statute Of Limitations Grounds Is Appropriate At The Pleading Stage ...........................................21

        2. Plaintiffs' Own Allegations Demonstrate Tolling Is Not Available ..............................................................................23

        3. The Complaint Establishes Plaintiffs Cannot Rely on Fraudulent Concealment .........................................................30

V. Plaintiffs Also Fail To State A Claim Under Certain State Laws On A State-By-State Basis..............................................................................................32

    A. Plaintiffs Fail To State A Claim Under Any Tennessee Law..................32

    B. Plaintiffs Are Barred From Pursuing Certain Claims As Class Actions...........................................................................................33

    C. Plaintiffs Are Barred From Bringing Certain Antitrust Claims Under *Illinois Brick*...................................................................34

    D. Plaintiffs Have Failed To State Consumer Protection Claims for States That Require Deceptive Practices ...............................................36

i

**TABLE OF CONTENTS**
(continued)

**Page**

E.   Florida, Virginia, And Iowa's Consumer Protection Laws Exempt
Transactions Involving Real Estate Licensees Such As Defendants ....... 37

VI.   Dismissal With Prejudice Is Warranted Because Amendment Would Be
Futile ........................................................................................................ 39

CONCLUSION ............................................................................................................ 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adv. Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
751 F.3d 796 (7th Cir. 2014) ....................................................................................5

*Agnew v. Nat'l Collegiate Athletic Ass'n*,
683 F.3d 328 (7th Cir. 2012) ..................................................................................11

*Alarm Detection Sys., Inc. v. Vill. Of Schaumburg*,
930 F.3d 812 (7th Cir. 2019) ..................................................................................10

*Anadarko Petroleum Corp. v. Commonwealth*,
206 A.3d 51 (Pa. Commw. Ct. 2019)*, aff'd in part, rev'd in part by* 247 A.3d
934 (Pa. 2021) ........................................................................................................37

*Antoine v. State Farm Mut. Auto. Ins.*,
662 F.Supp.2d 1318 (M.D. Fla. 2009) ....................................................................38

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................12

*Bakopoulos v. Mars Petcare US, Inc.*,
20 CV 6841, 2021 WL 2915215 (N.D. Ill. July 12, 2021)........................................7

*Bank of Am., N.A. v. Knight*,
725 F.3d 815 (7th Cir. 2013) ..................................................................................16

*Batton v. Nat'l Ass'n of Realtors*,
No. 21-cv-00430, 2024 WL 689989 (N.D. Ill. Feb. 20, 2024)......................*passim*

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................*passim*

*Bogie v. Rosenberg*,
705 F.3d 603 (7th Cir. 2013) ..................................................................................39

*In re Broiler Chicken Antitrust Litig.*,
290 F. Supp. 3d 772 (N.D. Ill. 2017)......................................................................35

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962) ................................................................................................11

*Brownmark Films, LLC v. Comedy Partners*,
682 F.3d 687 (7th Cir. 2012) ..................................................................................17

*Buford v. Ocwen Loan Servicing, LLC,*
No. 2:18CV154, 2018 WL 6790656 (E.D. Va. Nov. 2, 2018) ...............................................38

*Bundy v. Wetzel,*
No. 553 M.D. 2016, 2019 WL 1613026 (Pa. Commw. Ct. Apr. 12, 2019) ...........................19

*Butts v. Iowa Health Sys.,*
863 N.W.2d 36 (Iowa Ct. App. 2015)...................................................................................39

*Cancer Found., Inc. v. Cerberus Cap. Mgmt.,*
559 F.3d 671 (7th Cir. 2009) ...................................................................... 22, 28, 31

*Christian v. Atl. Richfield Co.,*
380 Mont. 495 (2015)..............................................................................................19

*In re Copper Antitrust Litig.,*
436 F.3d 782 (7th Cir. 2006) ...................................................................................30

*Craft v. Forklift Sys., Inc.,*
2003 WL 21642767 (Tenn. Ct. App. July 14, 2003) ...............................................33

*In re Elevator Antitrust Litig.,*
502 F.3d 47 (2d Cir. 2007) ......................................................................................17

*In re EpiPen Direct Purchaser Litig.,*
No. 20-CV-0827, 2022 WL 1017770 (D. Minn. Apr. 5, 2022)...............................14

*F.D.I.C. v. Wabick,*
214 F. Supp. 2d 864 (N.D. Ill. 2002)...............................................................23, 29

*Fells v. County of DuPage,*
No. 06 C 2519, 2006 WL 3692414 (N.D. Ill. Dec. 12, 2006) ...............................23

*Freeman Indus., LLC v. Eastman Chem. Co.,*
172 S.W.3d 512 (Tenn. 2005)...................................................................................33

*GEICO Corp. v. Autoliv, Inc.,*
345 F. Supp. 3d 799 (E.D. Mich. 2018) ..................................................................36

*In re Generic Pharms. Pricing Antitrust Litig.,*
368 F. Supp. 3d 814 (E.D. Pa. 2019)........................................................................34

*Greene v. Mizuho Bank,*
169 F. Supp. 3d 855 (N.D. Ill. 2016)..................................................................6, 7, 8

*Greer v. Bank One,*
No. 01 C 7352, 2002 WL 1732366 (N.D. Ill. July 25, 2002).............................29, 31

*Hamilton v. Spencer*,
  929 S.W. 2d 762 (Mo. Ct. App. 1996) ....................................................................35

*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*,
  19-md-02918-MMC, 2021 WL 4306018 (N.D. Cal. Sept. 22, 2021)..................................35

*Hill v. Wells Fargo Bank, N.A.*,
  946 F. Supp. 2d 817 (N.D. Ill. 2013)....................................................................21

*In re HIV Antitrust Litig.*,
  No 19-cv-02573-EMC, 2023 WL 3006572 (N.D. Cal. Apr. 18, 2023) ...........................36, 37

*Hotchkiss v. Blue Cross & Blue Shield of Fla., Inc.*,
  277 So. 3d 760 (Fla. Dist. Ct. App. 2019)................................................................38

*Hudgins v. Board of Ed. of City of Chi.*,
  No. 23 C 218, 2023 WL 4303004 (N.D. Ill. June 30, 2023) ................................................29

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977) .......................................................................... 34, 35, 36

*Illinois Brick. Davidson v. Microsoft Corp.*,
  792 A.2d 336 (2002) ....................................................................................35

*Indep. Trust Corp. v. Fidelity Nat. Title Ins. Co. of N.Y.*,
  577 F. Supp. 2d 1023 (N.D. Ill. 2008)....................................................................23

*In re Ins. Brokerage Antitrust Litig.*,
  618 F.3d 300 (3d Cir. 2010) ..............................................................................13

*Insulate SB, Inc. v. Adv. Finishing Sys., Inc.*,
  797 F.3d 538 (8th Cir. 2015) ............................................................................17

*In re Int. Rate Swaps Antitrust Litig.*,
  261 F. Supp. 3d 430 (S.D.N.Y. 2017)....................................................................27

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ....................................................................... 10, 13

*Kipp v. Ski Enter. Corp. of Wis., Inc.*,
  783 F.3d 695 (7th Cir. 2015) ..............................................................................5

*KM Enters., Inc., v. Global Traffic Techs., Inc.*,
  725 F.3d 718 ..............................................................................................6

*Komisar v. Blatt, Hasenmiller, Leibsker & Moore, LLC*,
  No. 14 c 7950, 2015 WL 401019 (N.D. Ill. Jan. 29, 2015)................................................22

v

*Kotteakos v. United States*,
328 U.S. 750 (1946) .................................................................................................... 14

*Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*,
No. 11-cv-8808, 2023 WL 6065308 (N.D. Ill. Sept. 18, 2023) ................................... 13

*Kurt v. Platinum Supp. Ins., Inc.*,
No. 19 C 4520, 2021 WL 3109667 (N.D. Ill. July 22, 2021) ......................................... 7

*Leppert v. Champion Petfoods USA Inc.*
No 18 C 4347, 2019 WL 216616 (N.D. Ill. Jan. 16, 2019) ............................................ 8

*Lizama v. Venus Labs., Inc.*,
679 F. Supp. 3d 848 (E.D. Mo. 2023) .......................................................................... 8

*Logan v. Wilkins*,
644 F.3d 577 (7th Cir. 2011) ................................................................................. 21, 25

*Mack v. Bristol-Myers Squibb*,
673 So.2d 100 (Fla. Dist. Ct. App. 1996) .................................................................... 35

*Mackey v. IDT Energy, Inc.*,
432 F. Supp. 3d 783 (N.D. Ill. 2020) ............................................................................ 7

*McWane, Inc. v. Crow Chi. Indus., Inc.*,
224 F.3d 582 (7th Cir. 2000) ...................................................................................... 23

*Moehrl, et al. v. Nat'l Assoc. of Realtors*,
No. 1:19-cv-01610 (N.D. Ill. Mar. 6, 2019) ................................................................ 28

*Monsanto Co. v. Spray-Rite Servs. Corp.*,
465 U.S. 752 (1984) ...................................................................................................... 9

*Moore v. Boating Indus. Ass'ns*,
819 F.2d 693 (7th Cir. 1987), *cert. denied*, 484 U.S. 854 (1987) ............................... 13

*Muir v. Nature's Bounty (DE), Inc.*,
No 15 C 9835, 2018 WL 3647115 (N.D. Ill. Aug. 1, 2018) ........................................... 8

*Mussat v. IQVIA*,
953 F.3d 441 (7th Cir. 2020) ........................................................................................ 5

*Namenda Indirect Purchaser Antitrust Litig.*,
338 F.R.D. 527 (S.D.N.Y. 2021) .................................................................................. 9

*Naples Motorcoach Resort Homeowners Ass'n, Inc. v. JG&M Props., LLC*,
363 So. 3d 1184 (Fla. Dist. Ct. App. 2023) ................................................................. 37

*Nsheiwat v. Am. Fam. Mut. Ins. Co.*,
SI, No. 321CV00068JAJSBJ, 2021 WL 8895035 (S.D. Iowa Nov. 22, 2021) ......................39

*O'Gorman v. City of Chicago*,
777 F.3d 885 (7th Cir. 2015) ...............................................................................................22

*O'Pere v. CitiMortgage Bank, N.A.*,
No. 14-cv-10230, 2015 WL 6859289 (N.D. Ill. Nov. 9, 2015) ............................................22

*Ohio v. Am. Express Co.*,
138 S. Ct. 2274 (2018) ........................................................................................................10

*Olszewski v. Quicken Loans Inc.*,
No. 12-CV-3131, 2013 WL 317060 (N.D. Ill. Jan. 28, 2013) .............................................29

*Omnicare, Inc. v. UnitedHealth Grp., Inc.*,
629 F.3d 697 (7th Cir. 2011) .................................................................................................9

*In re Opana ER Antitrust Litig.*,
162 F. Supp. 3d 704 (N.D. Ill. 2016) ............................................................................ 19, 34

*Orgone Cap. III, LLC v. Daubenspeck*,
912 F.3d 1039 (7th Cir. 2019) .............................................................................................27

*PepsiCo, Inc. v. Coca-Cola, Co.*,
315 F.3d 101 (2d Cir. 2002) ................................................................................................14

*Philos Techs., Inc. v. Philos & D, Inc.*,
802 F.3d 905 (7th Cir. 2015) .................................................................................................5

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
764 F. Supp. 2d 991 (N.D. Ill. 2011) ...................................................................................15

*Poindexter v. Mercedes-Benz Credit Corp.*,
792 F.3d 406 (4th Cir. 2015) ...............................................................................................38

*In re Pork Antitrust Litig.*,
495 F. Supp. 3d 753 (D. Minn. 2020) ..................................................................................25

*In re Pre-Filled Propane Tank Antirust Litig.*,
MDL No. 2567, 2019 WL 4796528 (W.D. Mo. Aug. 21, 2019) ..................................... 19, 20

*In re Qualcomm Antitrust Litig.*,
292 F. Supp. 3d 948 (N.D. Cal. 2017) ...................................................................................9

*Resnick v. Schwartz*,
No. 17 C 04944, 2018 WL 4191525 (N.D. Ill. Sept. 3, 2018) .............................................22

*Rocha v. FedEx Corp.*,
  15 F. Supp. 3d 796 (N.D. Ill. 2014) ..................................................................10

*Roeder v. J.P. Morgan Chase & Co.*,
  523 F. Supp. 3d 601 (S.D.N.Y. 2021), *aff'd*, No. 21-552, 2022 WL 211702
  (2d Cir. Jan. 25, 2022) .....................................................................................27

*Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*,
  No. 15 cv 6549 (CM), 2018 WL 7197233 (S.D.N.Y. Dec. 26, 2018) ....................9

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ..........................................................................................34

*Simon v. E. Ky. Welfare Rights Org.*,
  426 U.S. 26 (1976) ............................................................................................32

*Staley v. Gilead Scis., Inc.*,
  446 F. Supp. 3d 578 (N.D. Cal. 2020)...........................................................34, 36

*Tartan Constr., LLC v. New Equip. Servs. Corp.*,
  No. 17-CV-5950, 2018 WL 4563079 (N.D. Ill. Sept. 24, 2018) ....................29, 30

*In re Text Messaging Antitrust Litig.*,
  782 F.3d 867 (7th Cir. 2015) ...............................................................................9

*Tomlinson v. Goldman, Sachs & Co.*,
  682 F. Supp. 2d 845 (N.D. Ill. 2009)............................................................24, 27

*Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
  552 F.3d 430 (6th Cir. 2008) .............................................................................16

*In re Turkey Antitrust Litig.*,
  642 F. Supp. 3d 711 (N.D. Ill. 2022)...................................................................12

*Vacco v. Microsoft Corp.*,
  793 A.2d 1048 (Conn. 2002) ..............................................................................35

*Vergara v. Dal Ponte*,
  No. 15-cv-02407, 2018 WL 637824 (N.D. Ill. Jan. 31, 2018)*, aff'd sub nom.*
  *Vergara v. City of Chicago*, 939 F.3d 882 (7th Cir. 2009)................................ 22, 30, 31, 32

*Whitley v. Taylor Bean & Whitacker Mortg. Corp.*,
  607 F. Supp. 2d 885 (N.D. Ill. 2009).................................................................31

*Wilk v. Am. Med. Ass'n*,
  895 F.2d 352 (7th Cir. 1990) .............................................................................13

*Woori Bank v. Merrill Lynch*,
  923 F. Supp. 2d 491 (S.D.N.Y. 2013), *aff'd*, 542 F. App'x 81 (2d Cir. 2013) ................. 25, 29

**Statutes**

Clayton Act, 15 U.S.C. § 16 ........................................................................................... 4

Clayton Act, 15 U.S.C. § 22 ........................................................................................... 5

Colorado Consumer Protection Act, Colo. Rev. Stat. § 6–1–105 ............................... 36

Fla. Stat. Ann. § 501.212(6) .......................................................................................... 37

Illinois Antitrust Act, 740 ILCS 10/7(2) ...................................................................... 33

Iowa Code Ann. § 714H.4(1)(a)(4) ............................................................................... 38

Md. Code Ann. § 11-209(b) ........................................................................................... 35

Mo. Rev. Stat. § 416.141 ............................................................................................... 35

Mont. Code Ann. § 30-14-133(1) .................................................................................. 34

S.C. Code Ann. § 39-5-140(a) ....................................................................................... 34

Va. Code Ann. § 59.1-199(6) ........................................................................................ 38

**Other Authorities**

Aly J. Yale, *Lawsuit Alleges Collusion, Inflated Commissions Among Realtors*,
  FORBES (March 19, 2019),
  https://www.forbes.com/sites/alyyale/2019/03/19/lawsuit-alleges-collusion-
  inflated-commissions-among-realtors/?sh=5b1ff1f12a44; ....................................... 28

Brittany De Lea, *Real Estate Firms Accused of 'Conspiring' to Overcharge Home
  Sellers in Class-Action Suit*, Yahoo Finance (March 20, 2019),
  https://finance.yahoo.com/news/real-estate-firms-accused-apos-
  173722760.html ...................................................................................................... 28

*The Code of Ethics*, NAT. ASS'N OF REALTORS, https://www.nar.realtor/about-
  nar/governing-documents/the-code-of-ethics (last visited June 18, 2024) ............. 24

David McLaughlin and Patrick Clark, *U.S. Opens Antitrust Prove of Real Estate
  Brokerage Industry*, BLOOMBERG LAW NEWS (May 22, 2019),
  https://www.bloomberg.com/news/articles/2019-05-22/u-s-opens-antitrust-
  probe-of-real-estate-brokerage-industry ................................................................. 28

Fed. R. Civ. P. 9(b) ........................................................................................................ 31

*Governing Documents*, Nat'l Ass'n of Realtors, https://www.nar.realtor/about-nar/governing-documents (last visited June 18, 2024)...................................................................................................24

Jessica Guerin, *DOJ Demands to See CoreLogic's MLS Data in Antitrust Probe*, HousingWire (May 30, 2019), https://www.housingwire.com/articles/49198-doj-demands-to-see-corelogics-mls-data-in-antitrust-probe/ .................................................28

Joanne Cleaver, *Buying or selling a home? A New Lawsuit Could Change How Much You Pay the Realtor*, Chicago Tribune (May 30, 2019) ...........................................28

Kenneth R. Harney, *Class Action Suit Could Change Real Estate Commissions*, The Real Deal Real Estate News (March 22, 2019), https://therealdeal.com/miami/2019/03/22/class-action-suit-could-change-real-estate-commissions/...................................................................................................28

MLS Map of the National Association of REALTORS®, NAR, https://www.nar.realtor/mls-map-of-the-national-association-of-realtors (last visited April 11, 2024)...................................................................................................11

*Policies*, Nat. Ass'n of Realtors, https://www.nar.realtor/about-nar/policies (last visited June 18, 2024) ...................................................................................................24

*Previous Editions of the Code of Ethics*, Nat'l Ass'n of Realtors, https://www.nar.realtor/about-nar/governing-documents/code-of-ethics/previous-editions-of-the-code-of-ethics (last visited June 18, 2024)..........................24

S. Brobeck, Comments of Stephen Brobeck, Executive Director of Consumer Federation of America Before the Department of Justice-Federal Trade Commission Public Workshop on Competition Issues, Consumer Federation of America, 5 (June 5, 2018), available at https://consumerfed.org/wp-content/uploads/2018/06/CFA-comments-DOJFTC-public-workshop-on-competition-issues.pdf...................................................................................................17

## INTRODUCTION

Plaintiffs' second attempt at a complaint fails to correct for any of the insufficiencies raised previously by this Court and in Defendants' prior motion-to-dismiss briefing. Instead of making sufficient factual allegations about the Defendants in this case violating any laws, Plaintiffs simply try to parrot the allegations they made in an amended complaint filed against completely different defendants in another case, and hope that is enough for their claims to survive here. *See Batton v. Nat'l Ass'n of Realtors*, No. 21-cv-00430 (N.D. Ill.) (ECF No. 84). The Court should dismiss Plaintiffs' federal and state causes of action for the reasons provided below. *First*, as this Court ruled in *Batton v. Nat'l Ass'n of Realtors,* No. 21-cv-00430, 2024 WL 689989, at *10 (N.D. Ill. Feb. 20, 2024) (hereinafter "*Batton I MTD Order*"), Plaintiffs lack standing to sue these Defendants under the federal antitrust laws. *Second*, this Court lacks personal jurisdiction of any kind over the eight Named Plaintiffs. *Third*, Plaintiffs' Complaint fails to allege facts to plausibly suggest that the Defendants entered into *any* agreement—with non-party National Association of Realtors ("NAR") or amongst each other. The Complaint instead improperly lumps Defendants into a group and concludes that the group entered into a conspiracy, a type of vague "group pleading" that courts have held is inadequate in an antitrust case, with no allegations as to how, when, or even *if* each individual Defendant allegedly entered into an anticompetitive agreement. *Fourth*, Plaintiffs' Complaint on its face pleads facts that demonstrate their claims are untimely; Plaintiffs allege that the purportedly anticompetitive rule developed and adopted by NAR has been public since 1996, but fail to allege any facts showing why they are entitled to any tolling against these Defendants. *Finally*, Plaintiffs fail to plead sufficient facts in support of certain state law claims against Defendants.

## FACTUAL ALLEGATIONS

Plaintiffs seek to represent a national class of homebuyers who purchased residential real

estate that "was listed on an NAR MLS" over the course of the last *twenty-seven plus years*. Class Action Amended Complaint ("Am. Compl."), ECF No. 112, ¶¶ 141-42. Plaintiffs summarily allege that Defendants—five different real estate brokerage firms—participated in this long-lasting conspiracy by (1) requiring their franchisees and agents to comply with NAR rules; (2) supervising NAR's adoption, maintenance, and enforcement of rules; and (3) "encouraging the adoption of NAR's rules" by local realtor associations. *Id*. ¶ 111. Plaintiffs allege that the challenged NAR guidelines resulted in "reduced quality broker services" and an inflated total broker commission rate. *Id*. ¶¶ 4, 125.

Only one of the eight Named Plaintiffs is alleged to have resided in Illinois, while the remaining seven Named Plaintiffs are from various other states. *Id.* ¶¶ 20-27. Each of these out-of-state Named Plaintiffs allegedly enlisted a buyer-agent in the period from 2018 to 2021 to purchase a home in these other states. *Id.* The eighth Named Plaintiff purchased a home in Illinois in 2022 using a buyer-agent from Berkshire Hathaway HomeServices. *Id.* ¶ 27. The multiple listing services ("MLSs") associated with the non-Illinois transactions are GLVAR MLS, MLSPIN, RealTracs MLS, Stellar MLS, and Triad MLS, while the Illinois home was listed on the Midwest Real Estate Data ("MRED") MLS. *Id.* ¶¶ 20-27. Plaintiffs allege that these MLSs are owned or run by NAR members who adhere to NAR's guidelines and policies. *Id.* Plaintiffs do not allege the geographic scope of these MLSs, nor do they allege a relationship between Defendants and these MLSs, and none of these MLSs, save MRED, are in Illinois. *Id.* Plaintiffs allege that they were injured by the payment of inflated commissions, which they paid out of the funds from the purchase price of the house. *Id.* ¶¶ 55, 133.

Plaintiffs also allege that NAR is a trade association of real estate professionals that promulgates rules, policies, and practices that govern the conduct of NAR-affiliated MLSs. *Id.* ¶¶

2

5, 50. Local realtor associations own and operate these MLSs and decide independently whether to adopt NAR guidelines. *See id*. ¶¶ 49, 112. Plaintiffs have not alleged how each individual Defendant participated in NAR or required the adoption of the NAR guidelines. Instead, they simply state that Defendants' adoption of "NAR's rules, policies, and practices" are "agreements among competing real estate brokers." *Id*. ¶ 9; *see also id.* ¶ 66 ("NAR and the NAR MLSs' adoption and enforcement of these rules, policies, and practices . . . *constitute agreements* among competing real estate brokers.") (emphasis added). Plaintiffs also make allegations about certain executives serving on boards that may have developed the NAR Handbook and Code of Ethics, *id*. ¶¶ 114-16, but do not allege that these executives actually helped draft or develop any guidelines or participated in a conspiracy. Nor does the Amended Complaint allege that these executives or any Defendant agreed to draft, develop, or promulgate the Buyer-Agent Commission Rule or other challenged NAR rules.

All of Plaintiffs' allegations are based on NAR rules, policies, and its code of ethics. *See id*. ¶¶ 2, 55. Plaintiffs' Amended Complaint also acknowledges that the NAR rules and policies have existed since 1996 and have been publicly available since that time. *See id*. ¶¶ 50, 62-69, 152, 162. Plaintiffs further allege that they could not have discovered their claims until the November 19, 2020 DOJ settlement of its claims against NAR pursuant to Defendants' purported fraudulent concealment. *Id*. ¶¶ 135-140. The Amended Complaint cites numerous publicly available sources concerning the NAR Rules and details of the allegedly anticompetitive conduct; it also does not allege that the NAR Rules were ever concealed. *See, e.g.*, *id*. ¶¶ 64 n.13, 72 nn.16-17, 85 nn.25-26, 121 n.37, 126 n.40. The sources include the NAR rules themselves as well as articles and congressional testimony. For example, an article from 2007 cited in the Amended Complaint discusses, among many other points echoed in the Complaint, how "real

3

estate broker commissions are strangely unrelated to either the quantity or quality of service rendered or even to the value provided," how NAR rules "permit[] realtors to represent their services as 'free' or without cost," and how NAR rules "recommend[] that [commission] splits be designed to 'encourage cooperation,' as opposed to competition." *Id*. ¶ 85, n.26. Other articles contain similar statements putting Plaintiffs on notice of their claims and are dated between 2005 and 2006. *Id*. ¶¶ 72 nn.16-17, 121, n.37, 126 n.40. Plaintiffs have not alleged how the alleged conspiracy was purportedly concealed notwithstanding these publicly available sources.

## ARGUMENT

I. **Plaintiffs Lack Antitrust Standing Because More Directly Injured Parties, Home Sellers, Are Seeking the Same Injunctive Relief**

This Court has already held that "the home sellers rather than the homebuyers were better suited to seek injunctive relief." *Batton I MTD Order*, at *10. The Amended Complaint still "fail[s] to show that homebuyers faced 'a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur.'" *Id.* (quoting *Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 130 (1969)). Because Plaintiffs did not agree to amend their Complaint (or their Amended Complaint) to remove their claim for injunctive relief under § 16 of the Clayton Act, Defendants incorporate by reference Defendants' arguments and this Court's prior holdings in *Batton I*.

II. **The Court Lacks Personal Jurisdiction Over Defendants for the Claims Brought by Named Plaintiffs as Required by Fed. R. Civ. P. 12(b)(2)**

Plaintiffs cannot establish that this Court has personal jurisdiction over Defendants based on the facts alleged. *First*, Plaintiffs cannot meet the requirements of general jurisdiction because no Defendant is headquartered or incorporated in Illinois. *Second*, Plaintiffs cannot meet the requirements of specific jurisdiction because seven of the Named Plaintiffs' injuries have no connection to Illinois whatsoever, let alone to any Defendant's activity in Illinois. The eighth

4

Named Plaintiff's claim, while based in Illinois, has no connection to any Defendant. These connections are required to establish jurisdiction, and without them, this Court lacks jurisdiction over Defendants in relation to Plaintiffs' claims.

When a defendant moves to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of establishing personal jurisdiction." *Adv. Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014). In the class action context, "the named representatives must be able to demonstrate either general or specific personal jurisdiction[.]" *Mussat v. IQVIA*, 953 F.3d 441, 447 (7th Cir. 2020). "For a court to exercise specific jurisdiction, the lawsuit must 'result from alleged injuries that arise out of or relate to' the defendant's contacts with the forum." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 913 (7th Cir. 2015) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Nor can Plaintiffs rely on the personal jurisdiction provisions of Section 12 of the Clayton Act, 15 U.S.C. § 22 because they do not have a viable federal antitrust claim. The Court already ruled as much in *Batton I*, which the Court should follow here. *See Batton I*, 2024 WL 689989, at *10-11 (finding that the Clayton Act jurisdictional provision dropped out of the case after dismissal of Sherman Act claim).

### A.    The Named Plaintiffs Have Not Alleged General Jurisdiction

No Defendant is headquartered or incorporated in Illinois, Am. Compl. ¶¶ 28-34, thus Plaintiffs cannot invoke general jurisdiction. The Supreme Court has only found that a corporation is "essentially at home" in "the state of the corporation's principal place of business and the state of its incorporation." *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 698 (7th Cir. 2015) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). General jurisdiction requires "continuous and systematic general business contacts" with the forum, and so is "a

nonstarter" here. *KM Enters., Inc., v. Global Traffic Techs., Inc.,* 725 F.3d 718, 733 (quoting *Helicopteros Nacionales de Colom., S.A. v. Hall,* 466 U.S. 408, 416 (1984)). No Defendant is sufficiently "at home" in Illinois for general jurisdiction purposes.

**B.      The Named Plaintiffs Have Not Alleged Specific Jurisdiction**

Plaintiffs also have not adequately alleged specific jurisdiction, which "requires that the plaintiff's cause of action relate to the defendant's contacts with the forum." *KM Enters., Inc.,* 725 F.3d at 732-33 (quoting *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). In other words, "the defendant's *suit-related* conduct must create a substantial connection with the forum state." *Greene v. Mizuho Bank*, 169 F. Supp. 3d 855, 865-66 (N.D. Ill. 2016) (quoting *Adv. Tactical Ordnance Sys.*, 751 F.3d at 801). In assessing whether a plaintiff's claims relate to the defendants' conduct in a forum, courts consider only the contacts that the named plaintiffs' claims have with the forum, as absent class members are not parties before the court. *Id.* at 866.

Plaintiffs' home purchases—specifically, their payments of allegedly inflated commissions in relation to these purchases—are the events causing injury giving rise to Plaintiffs' claims. *See* Am. Compl. ¶¶ 55, 133. Here, seven of the eight Named Plaintiffs[1] purchased their homes outside of Illinois, using MLSs with no connection to Illinois. *Id*. ¶¶ 20-26.[2] It follows that no connection exists between these purchases and Defendants' *conduct* in Illinois. Put another way, there is no "suit-related conduct" connecting Defendants, Named Plaintiffs, and Illinois sufficient to give this Court specific jurisdiction over Named Plaintiffs'

---

[1] Mya Batton, Aaron Bolton, Michael Brace, Do Yeon Irene Kim, Anna James, James Mullis, and Theodore Bisbicos.

[2] Plaintiffs fail to allege the location of the buyer-agent each Named Plaintiff used, and fail to allege whether the buyer-agent is affiliated with a Defendant. The reasonable inference is that the buyer-agent is from the state of each home purchase, as the buyer-agent would need to be licensed in that state to participate in real estate transactions there.

causes of action against these Defendants. *See Greene*, 169 F. Supp. 3d at 865 ("The mere fact that [defendant] operates a branch in Illinois therefore does not confer specific jurisdiction over [defendant]" because plaintiffs "do not allege that any of [defendant's] suit-related conduct occurred on account of that branch"). Named Plaintiffs here do not allege that any aspect of their home purchase, including the commission payment, occurred on account of a Defendant's activity in Illinois, and so they cannot establish specific jurisdiction.

A recent case from another court in this district, *Bakopoulos v. Mars Petcare US, Inc.*, 20 CV 6841, 2021 WL 2915215 (N.D. Ill. July 12, 2021), is instructive. Plaintiffs there were six dog owners who bought a specific dog food and sued defendant Mars over misrepresentations of certain ingredients. *Id.* at *2. Three owners purchased the food in Illinois, another purchased it in Wisconsin, and two others purchased it in South Carolina. *Id.* The court held that it "lack[ed] specific personal jurisdiction over Mars for the claims brought by" the Wisconsin and South Carolina plaintiffs, because "Mars had no interaction with Illinois that was related to these purchases, so there is no specific jurisdiction over Mars for those claims." *Id.* at *4. The court accordingly dismissed the claims of the non-Illinois plaintiffs for lack of personal jurisdiction. *Id.* at *8. A similar outcome is necessary here with respect to the seven Named Plaintiffs that do not allege any interaction between any Defendant and Illinois that relates to Plaintiffs' out-of-state home purchases.

Other courts have made similar findings and have found specific jurisdiction wanting when "non-resident plaintiffs' injuries do not arise from or relate to non-resident [defendants'] Illinois activities." *Kurt v. Platinum Supp. Ins., Inc.*, No. 19 C 4520, 2021 WL 3109667, at *6-7 (N.D. Ill. July 22, 2021) (finding lack of specific jurisdiction and dismissing those named plaintiffs' claims); *accord Mackey v. IDT Energy, Inc.*, 432 F. Supp. 3d 783, 784-85 (N.D. Ill.

2020) (same); *Leppert v. Champion Petfoods USA Inc.* No 18 C 4347, 2019 WL 216616, at *5 (N.D. Ill. Jan. 16, 2019) (same); *Muir v. Nature's Bounty (DE), Inc.*, No 15 C 9835, 2018 WL 3647115, at *5 (N.D. Ill. Aug. 1, 2018) (same); *Lizama v. Venus Labs., Inc.*, 679 F. Supp. 3d 848, 856-58 (E.D. Mo. 2023) (same, and collecting cases). Thus, all of the non-Illinois Named Plaintiffs' claims should be dismissed.

The Court also lacks jurisdiction over the eighth Named Plaintiffs' claims. Unlike the other Named Plaintiffs, Steven Ewald is an Illinois resident. However, Mr. Ewald's claims are still legally insufficient for purposes of establishing specific personal jurisdiction because the allegations about his Illinois home purchase reveal no connection to any Defendant whatsoever. Am. Compl. ¶ 27. Mr. Ewald used a buyer-agent from non-party Berkshire Hathaway HomeServices, and his home was listed on non-party MRED. *Id.* Plaintiffs further allege on information and belief that MRED and its parent are owned and operated by brokers affiliated with non-party NAR. *Id.* There is nothing alleged, however, that would support jurisdiction over a *party*. In *Greene*, the court considered a similar scenario where four named plaintiffs—one from Illinois—brought a putative class action against a Japan-based defendant in Illinois federal court. 169 F. Supp. 3d at 858. The court determined that it would not have jurisdiction over the Illinois plaintiff's claim, because the defendant "had no transactional contacts with [the plaintiff] at all." *Id.* at 865. Similarly, Mr. Ewald lacks transactional contacts whatsoever with any of the Defendants.

In fact, this failure to link a Named Plaintiff's claims to a Defendant is not limited to Mr. Ewald's claims. Named Plaintiff Mr. Bisbicos, for example, purchased his home in Massachusetts using a buyer-agent affiliated with non-party Coldwell Banker, and also fails to allege any involvement by any Defendant in his home purchase. Am. Compl. ¶ 26. Mr. Bisbicos'

claim therefore lacks any connection to Defendants and the forum. None of the other Named Plaintiffs alleged which brokerage their buyer-agents were affiliated with, so they also fail to show a connection to any Defendant. *Id.* ¶¶ 20-24. To the extent Named Plaintiffs attempt to link their claims to a co-conspirator present in Illinois, such as non-party NAR, the Court should decline to exercise personal jurisdiction under a theory of conspiracy jurisdiction, as this Court already held in *Batton I. See Batton I*, 2024 WL 689989, at \*13. The Court should accordingly dismiss the Named Plaintiffs' claims for want of jurisdiction.

### III. Plaintiffs' Federal And State Antitrust Claims Fail Because The Complaint Does Not Plausibly Allege Any Agreement, Anticompetitive Or Otherwise

Plaintiffs have failed to allege the most basic foundation of an antitrust conspiracy—an agreement.[3] Rather, when viewing the Amended Complaint in the light most favorable to Plaintiffs, the Complaint pleads what the Supreme Court held in *Twombly* "will not suffice" for an antitrust claim: "[A]n allegation of parallel conduct and a bare assertion of conspiracy." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). To state a claim under Section 1 of the Sherman Act (or under the varying state antitrust laws), Plaintiffs must first allege that "Defendants had a contract, combination, or conspiracy ('an agreement')." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011). "Independent action is not proscribed," *Monsanto Co. v. Spray-Rite Servs. Corp.*, 465 U.S. 752, 761 (1984), because "[c]ollusion is illegal only when based on agreement." *In re Text Messaging Antitrust Litig.*, 782

---

[3] This element is required to allege an antitrust claim under either federal or state antitrust law. *See Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527, 572 (S.D.N.Y. 2021) ("There is no indication that any state's antitrust laws require proof of elements different from those that must be proved under the Sherman Act with respect to monopolization or restraint-of-trade claims."); *see also In re Qualcomm Antitrust Litig.*, 292 F. Supp. 3d 948, 974 (N.D. Cal. 2017) (assessing alleged unlawful agreements under California's Cartwright Act); *Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, plc*, No. 15 cv 6549 (CM), 2018 WL 7197233, at \*28-29 (S.D.N.Y. Dec. 26, 2018) (same, for New York's Donnelly Act).

F.3d 867, 879 (7th Cir. 2015). To plausibly allege an agreement, a complaint must include

"enough factual matter (taken as true) to suggest that an agreement was made"—that is, facts that

exclude the possibility that the purported conspirators acted independently. *See Twombly*, 550

U.S. at 556. Pleading "facts that could just as easily suggest rational, legal business behavior by

the Defendants as they could suggest an illegal conspiracy [is] insufficient to plead a violation of

the antitrust laws." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008). Courts

regularly dismiss complaints that lack sufficient factual allegations of an agreement. *See, e.g.*,

*Alarm Detection Sys., Inc. v. Vill. Of Schaumburg*, 930 F.3d 812, 827-29 (7th Cir. 2019); *Rocha

v. FedEx Corp.*, 15 F. Supp. 3d 796, 809 (N.D. Ill. 2014). The Court should do the same here.

Plaintiffs' antitrust claims lack three required elements that are necessary to properly

allege an antitrust violation. *First*, Plaintiffs' federal and state antitrust claims are based on

allegations about Defendants' unilateral conduct, not what they *agreed* to do. Plaintiffs do not

plausibly allege that Defendants' conduct is the product of any agreement between the

Defendants and NAR as opposed to Defendants' independent business decisions to participate in

trade associations and local MLSs, and do not plausibly allege that any such agreement was

anticompetitive. *Second*, Plaintiffs fail to allege that the Defendants entered into any agreement

with each other or any other horizontal competitor. *Third*, Plaintiffs fail to allege facts showing

that each Defendant individually entered into the purported conspiracy, and instead rely on

improper "group-pleading" allegations.[4]

---

[4] Additionally, Plaintiffs fail to allege a plausible product market, as their proposed market definition and
allegations account for only the effects on the buyer-side, and not the seller-side, of what is a two-sided
market. Plaintiffs' market definition must include both sides of the platform in two-sided markets. *See
Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285-86 (2018). Defendants, however, recognize that in *Batton
I*, the Court ruled that it will not decide whether to apply the Rule of Reason, quick look, or *per se*
analysis methods at the motion-to-dismiss stage. *Batton I MTD Order*, at *5 (N.D. Ill. Feb. 20, 2024).
Defendants thus incorporate by reference the arguments the *Batton I* defendants made on this issue, but
for judicial efficiency, will not re-brief that issue here.

**A.     Plaintiffs Do Not Plausibly Allege Any Anticompetitive Agreement Between Defendants And NAR**

Plaintiffs have not plausibly alleged any facts to suggest that the conduct that forms the basis of their antitrust claims was the product of any agreement between Defendants and NAR. They offer only conclusory allegations that there was an agreement. This does not suffice. Being "subject to a variety of rules promulgated by trade organizations[,]" Am. Compl. ¶ 10, is not the same as an agreement among competing real estate brokers to reduce price competition. If the Court only considers the *facts* alleged, as opposed to Plaintiffs' improper conclusions, the allegations at most constitute parallel conduct among Defendants and other NAR members. *See, e.g.*, *id.* ¶ 9 ("NAR's rules, policies, and practices have been adopted and enforced by NAR members, including NAR MLSs, *and are, therefore, agreements* among competing real estate brokers.") (emphasis added); *id.* ¶ 66 ("NAR and the NAR MLSs' adoption and enforcement of these rules, policies, and practices . . . *constitute agreements* among competing real estate brokers.") (emphasis added). Defendants and other NAR members allegedly adopted and

---

Plaintiffs similarly fail to allege a plausible geographic market. To allege an antitrust conspiracy under a rule of reason analysis, Plaintiffs must allege a plausible geographic market to show that Defendants have sufficient market power within that geographic area to cause anticompetitive harm. *See Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 335 (7th Cir. 2012). "[A]lthough the geographic market in some instances may encompass the entire Nation, under other circumstances it may be as small as a single metropolitan area." *Brown Shoe Co. v. United States*, 370 U.S. 294, 336-37 (1962). The geographic market "must . . . both 'correspond to the commercial realities' of the industry and be economically significant." *Id.* Here, Plaintiffs simply assert that "[t]he relevant geographic markets for the claims asserted herein are the geographic areas in which NAR MLSs operate," Compl. ¶ 55. But the geographic areas in which NAR MLSs operate do not plausibly reflect the commercial realities of the market for buyer-broker services as required under *Brown Shoe*. For example, in Illinois, a single MLS, Midwest Real Data LLC, covers 45,105 realtors who work across the state, including in places as far flung as Bloomington, Champaign County, Chicago, Illini Valley, and Fox Valley. *See* MLS Map of the National Association of REALTORS®, NAR, https://www.nar.realtor/mls-map-of-the-national-association-of-realtors (last visited April 11, 2024) (cited at Compl. ¶ 48 & n.10). While there may be business reasons for these realtors to form a single MLS, this area does plausibly reflect the relevant market for buyer-broker services. A prospective home buyer in Illinois is unlikely to view a broker who works in Chicago as "interchangeable" with a broker who works in Champaign. Thus, the economic realities render Plaintiffs' proposed geographic market implausible.

enforced NAR guidelines. And Plaintiffs allege the independent business reason as to why Defendants would participate in NAR: "Membership in NAR provides real estate professionals with a number of benefits, including liability insurance, access to MLSs, trainings, and more." Compl. ¶ 42. With only parallel conduct alleged, Plaintiffs ask this Court to allow discovery based on nothing more than "a bare assertion of conspiracy." *Twombly*, 550 U.S. at 556. That is not enough to survive a motion to dismiss. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Plaintiffs' allegations of parallel conduct do not give rise to a plausible inference of an agreement. Plaintiffs' antitrust claims are based on allegations that some executives of a subset of the Defendants served on NAR boards or committees that—at some unidentified point in time—may have drafted, developed, and promulgated the NAR Handbook and Code of Ethics, Am. Compl. ¶¶ 114-16; that each Defendant required its "franchisees, brokerages, and individual realtors" to comply with those rules*, Id.* ¶¶ 10, 112; and that, in turn, executives of Defendants' franchisees "govern[] the local realtor associations that own and operate" regional MLSs, *Id.* ¶ 117. But Plaintiffs must allege a meeting of the minds to plead an antitrust agreement. *Twombly*, 550 U.S. at 557. The Amended Complaint, however, does not allege that Defendants or their franchisees ever communicated or agreed with each other about the challenged NAR guidelines, let alone their potential impact on commission rates, or any private information about the market. *Cf. In re Turkey Antitrust Litig.*, 642 F. Supp. 3d 711, 726 (N.D. Ill. 2022) (treating "direct information exchanges" between defendants about "production output and competitive pricing" as indicative of a conspiracy). Plaintiffs also do not allege that any of the identified executives actually participated in drafting, developing, or promulgating any guidelines, let alone

that they agreed to draft, develop, or promulgate the Buyer-Agent Commission Rule or other challenged NAR rules. The mere fact that executives of certain Defendants served on trade association boards or committees at some point in time does not mean that their actions can be deemed as acts taken on behalf of the separate companies for which they served as executives. *Batton I MTD Order*, at \*13.

Plaintiffs' claims thus boil down to a theory that Defendants' participation in a trade association (NAR) and being subject to its guidelines is a conspiracy in violation of the antitrust laws. But it is well-established that "a trade association is not . . . 'a walking conspiracy.'" *Wilk v. Am. Med. Ass'n*, 895 F.2d 352, 374 (7th Cir. 1990). And to establish an agreement, Plaintiffs must allege that the "alleged co-conspirators 'acted other than independently in adhering to the trade association's programming or guidelines.'" *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*, No. 11-cv-8808, 2023 WL 6065308, at \*13 (N.D. Ill. Sept. 18, 2023). "[M]ere membership in a trade association, attendance at trade association meetings, and participation in trade association activities are not, in and of themselves, condemned or even discouraged by the antitrust laws." *Moore v. Boating Indus. Ass'ns*, 819 F.2d 693, 712 (7th Cir. 1987), *cert. denied*, 484 U.S. 854 (1987); *see also In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 349 (3d Cir. 2010) ("[N]either defendants' membership in the [trade group], nor their common adoption of the trade group's suggestions, plausibly suggest conspiracy."); *Kendall*, 518 F.3d at 1048 ("[M]erely charging, adopting or following the fees set by a Consortium is insufficient as a matter of law to constitute a violation of Section 1 of the Sherman Act."). Because that is all Plaintiffs have alleged, they fail to plausibly allege an agreement, much less an anticompetitive one.

**B. Plaintiffs Do Not Plausibly Allege Any Agreement Between Defendants Or Any Other Direct Competitor**

Even if the Court concludes that Plaintiffs have plausibly alleged an agreement between NAR and Defendants by virtue of Defendants being subject to NAR's rules, that still fails to adequately state an antitrust claim because it would only be a bilateral (and vertical) agreement between NAR and each Defendant rather than a horizontal agreement among the Defendants themselves. Where defendants are alleged to only be in a vertical arrangement with a non-competitor but with no horizontal agreements amongst horizontal competitors—i.e., "separate spokes meeting at a common center . . . without the rim of the wheel to enclose the spokes"—there is not "a single conspiracy" in violation of the antitrust laws. *Kotteakos v. United States*, 328 U.S. 750, 755 (1946); *see also PepsiCo, Inc. v. Coca-Cola, Co.*, 315 F.3d 101, 110-111 (2d Cir. 2002) (holding that a hub-and-spoke conspiracy requires proof of a horizontal agreement, that is, an agreement on the "rim" of the wheel). Every circuit court to address the question has "uniformly held rimless hub-and-spokes conspiracies do not violate § 1 of the Sherman Act." *See In re EpiPen Direct Purchaser Litig.*, No. 20-CV-0827 (ECT/JFD), 2022 WL 1017770, at *6-7 (D. Minn. Apr. 5, 2022) (citing decisions from Second, Third, Fourth, and Sixth Circuits).

As explained by the Amended Complaint, NAR, as a trade association, does not compete horizontally with Defendants. *See* Am. Compl. ¶ 41. The Complaint contains no allegations that any of the Defendants or their franchisees ever communicated or agreed with each other or any other horizontal competitor about the challenged NAR guidelines, let alone their potential impact on commission rates. Thus, even if the Court accepts Plaintiffs' conclusory allegations that each Defendant entered into an individual agreement with NAR to adhere to and enforce the challenged guidelines, Plaintiffs have not plausibly alleged a conspiracy among Defendants or any of their horizontal competitors sufficient to properly allege a hub-and-spoke conspiracy.

Further, the market structure alleged in Plaintiffs' Amended Complaint undermines the plausibility that Defendants had enough market power to influence the adoption of the Buyer-Agent Commission Rule, and Plaintiffs provide no factual, non-conclusory allegations that Defendants had the ability to influence adoption. *See In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 764 F. Supp. 2d 991, 1001 (N.D. Ill. 2011) (treating the market's conduciveness to agreement as relevant to whether there is an agreement). Plaintiffs highlight throughout their Complaint that the competitive dynamics in the real estate industry operate at the local level, and that Defendants have little, if any, input regarding the rules that NAR and the localized MLSs adopt. *See, e.g.*, Am. Compl. ¶¶ 19, 56, 64-66, 69. Rather, NAR adopts rules that "govern the conduct of local NAR associations, local brokers, and local realtors." *Id.* ¶ 19. These local NAR and other multi-member local realtor associations—not Defendants—own and operate any one of the hundreds of regional MLSs, and decide independently whether to adopt those NAR rules. *See id*. ¶¶ 49, 112. It is therefore not Defendants that decide whether MLSs and associations adopt NAR rules such as the Buyer-Agent Commission Rule. Rather, Plaintiffs allege in a conclusory fashion that Defendants "encourag[e]" the adoption of NAR rules by "participating in the governance and management" of the local realtor associations, *id.* ¶ 112, but allege no actual facts to support this conclusion or the required inferential leap that Defendants were able to affect the local realtor associations in any way, particularly regarding the Buyer-Agent Commission Rule. The Amended Complaint includes no allegations about the governing structure of any of the local realtor associations, what local realtor associations Defendants belong to, what acts Defendants may have taken regarding the adoption of the Buyer-Agent Commission Rule with these local associations, or any other specific, non-conclusory allegations

15

about both Defendants and local associations.[5] Allegations that describe an industry that involves hundreds or thousands of other actors with more direct influence over the adoption of the Buyer-Agent Commission Rule—without any facts to suggest Defendants' purported influence over these actors—do not plausibly support the existence of an overarching agreement amongst the limited number of brokerage Defendants as Plaintiffs attempt to allege here.

### C. Plaintiffs' Conclusory "Group Pleading" Allegations Are Inadequate

As discussed above, Plaintiffs have failed to properly allege any agreement between Defendants and NAR, or any agreement amongst the Defendants. Instead, what Plaintiffs have tried to do is reference Defendants together and vaguely allege that they all entered into a conspiracy, rather than allege what agreements each Defendant entered into individually. It is well-settled, however, that plaintiffs in antitrust cases cannot plead an overarching, multi-defendant conspiracy by lumping defendants together through this type of "group pleading." Instead, when a plaintiff alleges that a defendant conspired, it is "essential to show that [the] particular defendant joined the conspiracy and knew of its scope." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). The Supreme Court in *Twombly* specifically rejected any vague group pleading, explaining "the complaint . . . furnishe[d] no clue as to which of the four [defendants] (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place." 550 U.S. at 565 n.10; *see also Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008) ("Generic pleading,

---

[5] At most, Plaintiffs allege that Defendants used MLSs run by local associations. These allegations, however, lend further support to the implausibility of the conspiracy. For example, Plaintiffs allege that a Las Vegas-based NAR-affiliated association operated an MLS using software that allowed brokers to filter out properties "offering discount buyer-agent commissions." Compl. ¶¶ 80-81. These allegations only demonstrate that there were in fact listings with discounted buyer-agent commissions, commissions at 2.5%, and commissions higher than 2.5%. *Id.* Thus, even in the specific scenario Plaintiffs have alleged, the facts do not support an agreement, as demonstrated by the existence of a range of commissions.

alleging misconduct against defendants without specifics as to the role each played in the alleged conspiracy, was specifically rejected by *Twombly*."); *Insulate SB, Inc. v. Adv. Finishing Sys., Inc.*, 797 F.3d 538, 544 (8th Cir. 2015) (dismissing claim containing "vague references to concerted action"); *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (affirming dismissal of antitrust claims based on conclusory allegations "without any specification of any particular activities by any particular defendant").

Here, the Amended Complaint suffers from this same issue of group pleading. Plaintiffs do not specifically allege that each individual Defendant entered into any agreement, much less how or when. Plaintiffs instead make conclusory allegations throughout as to all "Defendants." But when the Court analyzes the specific, substantive factual allegations with respect to each Defendant, there is no basis for an antitrust claim. For example, with respect to Compass, the Complaint contains no specific substantive allegations: there is not a single allegation that Compass was involved in the governance of NAR or MLSs, or that Compass had any part in the development, enforcement, or adoption of the Buyer-Agent Commission Rule. *See* Compl. ¶¶ 10, 28, 81 (the only three paragraphs discussing Compass). The question remains how Compass took part in any agreement by simply being "subject to" its trade association's policies. *See id.* ¶ 10.

With respect to Redfin—one of the first companies to "use the Internet to streamline homebuying and reduce commissions," and to attempt to "discount" or offer "unbundled services"[6]—the Complaint contains no allegations connecting Redfin to a conspiracy that would be completely antithetical to its business model. *Id.* ¶¶ 30, 33, 77, 116. The most Plaintiffs allege

---

[6] S. Brobeck, Comments of Stephen Brobeck, Executive Director of Consumer Federation of America Before the Department of Justice-Federal Trade Commission Public Workshop on Competition Issues, Consumer Federation of America, 5 (June 5, 2018), available at https://consumerfed.org/wp-content/uploads/2018/06/CFA-comments-DOJFTC-public-workshop-on-competition-issues.pdf (cited Compl. ¶ 126 n.39). Since Plaintiffs cite this in the Amended Complaint, the court may consider it at the motion to dismiss stage. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

is that Redfin's CEO "participated" in NAR's Multiple Listing Issues & Policies Committee meetings. *Id.* ¶ 116. Plaintiffs, however, do not allege any facts that would connect that participation to an alleged conspiracy.

There are similarly almost no specific allegations as to eXp, Weichert, or United, and in particular, no specific allegations as to how they may have joined any alleged conspiracy. At most, the Complaint alleges that executives of those Defendants may have, at some undefined point, sat on NAR boards. *Id.* ¶ 114. Plaintiffs do not allege, however, that these officers served on the particular board or committee that drafted, developed, and promulgated the relevant NAR rule. And as this Court recognized in *Batton I*, there is a "well-recognized distinction between [a] corporation and its officers." *Batton I MTD Order*, at *13. The mere fact that individual executives may have served on NAR boards does not mean "that their performance of their duties as directors of the NAR can be deemed as acts taken on behalf of the separate companies for which they served as executives." *Id.* The Court should disregard Plaintiffs' improper and insufficient group pleading allegations and dismiss Plaintiffs' Amended Complaint.

## IV.    Plaintiffs' State Law Claims Are Time Barred

Plaintiffs' claims are based on an alleged conspiracy concerning NAR rules that have been in place since 1996. Am. Compl. ¶¶ 152, 162, 169. Plaintiffs filed this action twenty-seven years later on November 2, 2023. *See* ECF No. 1. None of Plaintiffs' claims have a twenty-seven-year statute of limitations.[7] Thus, Plaintiffs have the burden of showing that an accrual exception or tolling doctrine renders their claims timely. Plaintiffs invoke three such doctrines, (i) the continuing violation doctrine; (ii) the discovery rule; and (iii) fraudulent concealment, but these doctrines do not apply to all of Plaintiffs' claims, and some must be dismissed as

---

[7] Attached hereto as Exhibit A is a chart of the relevant statute of limitations for Plaintiffs' claims.

untimely.[8]

### A.    The "Continuing Violation" Doctrine Does Not Save Plaintiffs' Claims

The statutes of limitations for Plaintiffs' state law claims began to run in 1996 when the allegedly anticompetitive rules were adopted. However, at best, if the continuing violation doctrine applies, Plaintiffs argue the statutes of limitations began to run for each Plaintiff and purported class member when each was injured—here, when they purchased their homes. Am. Compl. ¶ 133. But eleven of the states on whose laws Plaintiffs base their claims have not recognized the continuing violation doctrine, and therefore, those claims began to accrue in 1996, regardless of when each Plaintiff and purported class member purchased their home, rendering those claims time-barred. *See In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 725 (N.D. Ill. 2016) (holding that Kansas and Mississippi do not follow the continuing violation doctrine and dismissing state antitrust claims as untimely under Rule 12(b)(6)); *In re Pre-Filled Propane Tank Antirust Litig.*, MDL No. 2567, 2019 WL 4796528, at *4 (W.D. Mo. Aug. 21, 2019) (holding that the District of Columbia, Florida, Kansas, Massachusetts, Mississippi, Nebraska, New Hampshire, New York, Tennessee, Vermont, and Wisconsin have not recognized the "continuing violations doctrine," and dismissing antitrust claims in those states as time-barred).[9] For states where the continuing violation doctrine may be recognized, the statute of

---

[8] The defendants in *Batton I* also raised statute of limitations arguments, but did not present the exact arguments set forth herein, or identify the specific allegations and documents incorporated into the Complaint that make a ruling on statute of limitations not only appropriate, but necessary, at the motion-to-dismiss stage.

[9] An additional two states—Montana and Pennsylvania—likely do not apply the continuing violation doctrine to antitrust claims and, therefore, the statute of limitations for those claims accrued in 1996 when the alleged anticompetitive rules were adopted. *See Bundy v. Wetzel*, No. 553 M.D. 2016, 2019 WL 1613026, at *6-7 (Pa. Commw. Ct. Apr. 12, 2019) (recognizing continuing violations doctrine in certain contexts, but noting that Pennsylvania courts "ha[ve] generally disapproved of 'continuing violations' that create ongoing causes of action and compiling cases for same); *Christian v. Atl. Richfield Co.,* 380 Mont. 495, 505 (2015) (explaining that before applying the continuing violation doctrine, a court must consider "whether a [tort] is temporary or permanent in character").

limitations allegedly began to run for each home-buyer Plaintiff when they purchased their home. Am. Compl. ¶ 133. Thus, Plaintiffs could arguably sue for home purchases made within the respective statute of limitations period dating back from when this action was filed, but claims for home purchases before that period are time-barred. *In re Pre-Filled Propane Tank*, 2019 WL 4796528, at *4.

In the Amended Complaint (and *Batton I*), Plaintiffs contend that the statutes of limitations accrued later or are tolled in all states—whether the continuing violation doctrine applies or not—because of the discovery rule and Defendants' alleged fraudulent concealment. For the reasons outlined below, the statute of limitations is not tolled for any of Plaintiffs' claims, and Plaintiffs' claims should be dismissed either in their entirety for those eleven states, at least, that do not recognize the continuing violation doctrine, or to the extent Plaintiffs seek to bring claims for purchases made outside of the statute of limitations period for the states that may recognize the continuing violation doctrine.

### B. Plaintiffs' Claims Are Not Tolled

In an attempt to save their twenty-seven-year-old claims, Plaintiffs contend that the statutes of limitations were tolled because (i) they allegedly did not discover their claims until November 19, 2020—the date of the DOJ settlement of its claims against NAR; [10] and (ii) Defendants purportedly fraudulently concealed the alleged conspiracy. Am. Compl. ¶¶ 135-40. Even assuming Plaintiffs are correct that the discovery rule and/or tolling due to fraudulent

---

[10] Assuming *arguendo* that Plaintiffs could not discover their claims until November 2020, Plaintiffs' claims under Montana, Oregon, Tennessee, and Virginia state consumer protection laws are still time-barred by the one-year (Oregon and Tennessee) and two-year (Montana and Virginia) statute of limitations for those claims. *See* Exhibit A. Thus, for any Plaintiff or putative class member who purchased a home prior to November 2, 2022 (Oregon and Tennessee), and November 2, 2021 (Montana and Virginia), their claims under those states' laws are time-barred.

concealment are applicable in each of the states on which they base their claims,[11] Plaintiffs are wrong about the application of those tolling principles to their claims. None of the statutes of limitations are tolled for any of Plaintiffs' claims because, as described below, the Amended Complaint affirmatively and voluntarily establishes Defendants' statute of limitations defense; Plaintiffs therefore cannot exploit either the discovery rule or any tolling due to purported fraudulent concealment to save their untimely claims.

> **1.** **Dismissal On Statute Of Limitations Grounds Is Appropriate At The Pleading Stage**

As this Court explained in *Batton I*, in the Seventh Circuit, "a plaintiff's complaint need not anticipate an affirmative defense such as the statute of limitations to survive a motion to dismiss."[12] *Batton I MTD Order* at \*6. However, such a rule does not preclude dismissal at the motion-to-dismiss stage on statute of limitations grounds. *See, e.g.*, *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 822-25 (N.D. Ill. 2013) (granting motion to dismiss on statute of limitations even though courts "rarely" do so). Rather, "when the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins*, 644 F.3d 577, 582-83 (7th Cir. 2011) (affirming motion to dismiss as time-barred); *Hill*, 946 F. Supp. 2d at 822-25 (granting motion to dismiss on statute of limitations grounds despite equitable estoppel, equitable tolling, and continuing violation arguments).

---

[11] Although this Court held in *Batton I* that Plaintiffs had shown that either the discovery rule or tolling by fraudulent concealment is applicable in each of the states at issue, *see Batton I MTD Order* at \*7, and though Defendants do not ask this Court to relitigate that decision at this time, Defendants reserve their right to contest Plaintiffs' arguments concerning the viability of those bases for tolling in each state. For example, in *Batton I*, some of Plaintiffs' arguments concerning accrual and tolling appear to be inaccurate or misleading. Attached hereto as Exhibit B is a brief chart outlining some, but not all, of the areas where Plaintiffs' arguments fall short concerning those tolling doctrines. *See* Exhibit B.

[12] Defendants contend that the Seventh Circuit's pleading standard for statute of limitations is incorrect, and reserves the right to challenge that standard in any subsequent appeal.

Indeed, this Court previously granted a motion to dismiss at the pleading stage based on the statute of limitations—a decision affirmed by the Seventh Circuit—where "the allegations of the complaint show[ed] that relief is barred," even in the face of arguments that the statute of limitations was tolled because of equitable estoppel. *Vergara v. Dal Ponte*, No. 15-cv-02407, 2018 WL 637824, at *2-4 (N.D. Ill. Jan. 31, 2018)*, aff'd sub nom. Vergara v. City of Chicago*, 939 F.3d 882 (7th Cir. 2009).[13]

Plaintiffs' claims here are likewise an example of an instance where dismissal based on the statute of limitations is warranted because the Amended Complaint itself sets forth everything required to demonstrate the claims are time barred. Plaintiffs affirmatively plead when the alleged conspiracy began (i.e., 1996), and anticipating that their claims are time barred, futilely attempt to demonstrate that their claims should be tolled to escape the statute of limitations. Am. Compl. ¶¶ 132-40. Plaintiffs have thus put the timeliness of their claims squarely at issue, and made affirmative allegations that demonstrate that they cannot plausibly rely on the discovery rule or fraudulent concealment as a matter of law. As a result, in the Amended Complaint itself, Plaintiffs "plead[] facts establishing an impenetrable statute of limitations defense." *Komisar v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, No. 14 c 7950, 2015 WL 401019, at *2-3 (N.D. Ill. Jan. 29, 2015) (granting Rule 12(b)(6) motion to dismiss on

---

[13] *See also O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) (affirming dismissal on Rule 12(b)(6) motion and holding that "although a plaintiff need not anticipate or overcome affirmative defenses such as those based on the statute of limitations, if a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss the complaint on that ground"); *Cancer Found., Inc. v. Cerberus Cap. Mgmt.*, 559 F.3d 671, 674-75 (7th Cir. 2009) ("[D]ismissal is appropriate when the plaintiff pleads himself out of court by alleging facts sufficient to establish the complaint's tardiness."); *Resnick v. Schwartz*, No. 17 C 04944, 2018 WL 4191525, at *6 (N.D. Ill. Sept. 3, 2018) ("[W]hen the allegations of the complaint itself reveal the limitations problem, then a court may consider it at the pleading stage."); *O'Pere v. CitiMortgage Bank, N.A.*, No. 14-cv-10230, 2015 WL 6859289, at *2 (N.D. Ill. Nov. 9, 2015) (dismissing claims where "plaintiff effectively pleads himself out of court by alleging facts that are sufficient to satisfy a statute of limitations defense").

statute of limitations); *Fells v. County of DuPage*, No. 06 C 2519, 2006 WL 3692414, at *6 (N.D. Ill. Dec. 12, 2006) (dismissing claims *sua sponte* where complaint established claims were time barred).

This twenty-seven-year-old alleged conspiracy is a poster child for why statutes of limitations were created and dismissal at the motion-to-dismiss stage is especially warranted. The passage of time in this case greatly prejudices Defendants' ability to defend against Plaintiffs' spurious accusations. Surely, with the lapse of almost three decades, important evidence has been lost and witnesses' memories, provided that they are still living, are impaired by the delay. Moreover, the burden and expense of conducting discovery for an over twenty-seven-year period is particularly problematic. Ignoring the dispositive allegations in the Amended Complaint until after discovery at the summary judgment stage defeats the purpose of the protections that statutes of limitations are intended to provide. Defendants should not be burdened with the significant expense of discovery back to 1996 for patently untimely claims.

**2. Plaintiffs' Own Allegations Demonstrate Tolling Is Not Available**

In order to invoke both the discovery rule and tolling due to fraudulent concealment, a plaintiff must exercise diligence to uncover their claim and injury. *See, e.g.*, *Indep. Trust Corp. v. Fidelity Nat. Title Ins. Co. of N.Y.*, 577 F. Supp. 2d 1023, 1042 (N.D. Ill. 2008) (holding that fraudulent concealment requires "that the plaintiff could not have identified through the exercise of ordinary diligence" their injury); *F.D.I.C. v. Wabick*, 214 F. Supp. 2d 864, 876 (N.D. Ill. 2002) ("To benefit from the discovery rule, potential plaintiffs must exercise due diligence to uncover their injuries . . . [because] [t]he discovery rule does not permit the victim of an alleged wrong to postpone the running of the statute of limitations by willfully closing his eyes, ostrich-like, to a known probability that he has been injured, even if he is not certain."); *see also McWane, Inc. v. Crow Chi. Indus., Inc.*, 224 F.3d 582, 585 (7th Cir. 2000) (holding that the

limitations period "begins when the injury could have been discovered through the exercise of appropriate diligence, not discovery of the actual injury").

Putting aside that the Amended Complaint fails to sufficiently allege how Plaintiffs exercised any diligence or how they could not have discovered their claims until 2020, Plaintiffs' own allegations in the Complaint and the documents that it incorporates affirmatively demonstrate that a reasonable person would have identified the publicly available information Plaintiffs cite throughout the Complaint, and discovered their claims and alleged injury no later than 2007. Nearly everything about the alleged anticompetitive conduct on which Plaintiffs' claims are based has been public and not concealed in any way—all of which is set forth in the Complaint itself.

### a. The NAR Rules Are Publicly Available

Plaintiffs' entire Complaint is based on NAR rules, policies, and its code of ethics (collectively, the "NAR Rules") that Plaintiffs contend are anticompetitive. *See, e.g.,* Am. Compl. ¶¶ 2, 55. However, there is no dispute that the NAR Rules in question have existed since 1996, and are, and have always been, publicly available.[14] *Id.* ¶¶ 62-65, 152, 162. In other words, Plaintiffs effectively admit that their Complaint is not based on a conspiracy that was concealed. Indeed, Plaintiffs cite to publicly available sources and the URL for the NAR Rules throughout

---

[14] *See Policies*, NAT. ASS'N OF REALTORS, https://www.nar.realtor/about-nar/policies (last visited June 18, 2024); *The Code of Ethics*, NAT. ASS'N OF REALTORS, https://www.nar.realtor/about-nar/governing-documents/the-code-of-ethics (last visited June 18, 2024). Indeed, all NAR governing documents are publicly available, including all previous editions of the NAR Code of Ethics. *See Governing Documents*, NAT'L ASS'N OF REALTORS, https://www.nar.realtor/about-nar/governing-documents (last visited June 18, 2024); *Previous Editions of the Code of Ethics*, NAT'L ASS'N OF REALTORS, https://www.nar.realtor/about-nar/governing-documents/code-of-ethics/previous-editions-of-the-code-of-ethics (last visited June 18, 2024). The Court may take judicial notice of the public availability of the NAR Rules. *See Tomlinson v. Goldman, Sachs & Co.*, 682 F. Supp. 2d 845, 846 n.2 (N.D. Ill. 2009) (citing *520 S. Mich. Ave. Assocs., Ltd v. Shannon*, 549 F.3d 1119, n.14 (7th Cir. 2008)) (holding that the court may take judicial notice of and consider documents in the public record without converting to summary judgment).

their Complaint, and do not allege that the NAR Rules were ever concealed. *See, e.g.*, *id.* ¶ 64, n.13. Plaintiffs also cite to at least one article from 2006 that cites to the URL of the publicly available NAR Rules, thereby confirming that the NAR Rules were publicly available at that time. *Id.* ¶ 85, n.26.[15] A reasonably diligent plaintiff would have (and could have) easily accessed and reviewed NAR's Rules at any time to discover the facts underlying Plaintiffs' claims. *See Logan*, 644 F.3d at 582-83 (affirming dismissal of time-barred claims on Rule 12(b)(6) motion where plaintiff "was aware of every act allegedly committed pursuant to that conspiracy that injured him"); *Woori Bank v. Merrill Lynch*, 923 F. Supp. 2d 491, 497, 500 (S.D.N.Y. 2013), *aff'd*, 542 F. App'x 81 (2d Cir. 2013) (dismissing complaint as time barred based on availability of "extensive publicly available information" to support its claims); *In re Pork Antitrust Litig.*, 495 F. Supp. 3d 753, 774 (D. Minn. 2020) ("It is difficult to reconcile the Plaintiffs [sic] belief that Defendants conducted this conspiracy via public statements with its assertion that Defendants were also concealing it.").

> **b. The Amended Complaint Cites Articles And Congressional Testimony From 2005-2007, Disclosing The Basis For Plaintiffs' Claims And Injury**

Plaintiffs' Amended Complaint relies on, quotes from, and cites to numerous publicly available articles and congressional testimony dating back to 2005, which publicly discussed the NAR Rules, the alleged anticompetitive conduct by Defendants, and Plaintiffs' alleged injury. *See, e.g.*, Am. Compl. ¶¶ 72 nn.16–17, 85 nn.25–26, 126 n.40. These documents—which are incorporated into the Amended Complaint—demonstrate that Plaintiffs could have and should have discovered their alleged claims and injury no later than 2007 with only cursory diligence.

---

[15] *Citing* Mark S. Nadel, *A Critical Assessment of the Traditional Residential Real Estate Broker Commission Rate Structure*, 5 CORNELL REAL ESTATE REV. 1, 64–65 (2007), https://ecommons.cornell.edu/server/api/core/bitstreams/a1e89832-8c04-4f15-96a3-b5c13f4ab5cb/content.

Plaintiffs therefore cannot rely on the discovery rule or fraudulent concealment to save their untimely claims from dismissal. Indeed, many of these articles and the public testimony, a few examples of which are excerpted below, read as if they could have been first drafts of Plaintiffs' Complaint in this action. As a result, Plaintiffs have alleged facts demonstrating that there is no conceivable set of facts on which they could defeat Defendants' statute of limitations defense.

Among the publicly available documents Plaintiffs cite and incorporate into their Amended Complaint are:

- An August 2005 *Wall Street Journal* article entitled "The Realtor Racket," which described the National Association of Realtors as a "price-fixing scheme" and "cartel" that victimizes "home buyers and sellers who are required to pay brokerage fees that can easily be several thousand dollars above a competitive market price," compared to the "industry average in other countries." *Id*. ¶ 121, n.37.[16]

- A June 2006 article in the Consumer Federation of America that refers to the real estate industry as a "Cartel," and describes the same allegations asserted in the Complaint, including (a) "a portion of th[e] commission is added to the sale price of the home so that the seller and buyer both end up paying a portion of the commission;" (b) buyers are "rarely aware" they pay commissions; (c) the MLS is a "monopolization of listings that allows traditional brokers to support 6-7% commissions," as "home buyers will not have access to [] information about the [commission] splits;" and (d) home buyers "cannot check to see whether their broker is steering them away from houses carrying lower [commission] splits." *Id*. ¶ 72 n.16.[17] Like Plaintiffs, *see id*. ¶ 73, the article also questions whether "novice brokers who have just received their license" offer services of equal value to those "highly skilled brokers who have been practicing for decades," and why "comparable brokerage services offered in other economically developed countries [are] much less expensive[] than in the United States?" *Id*. ¶ 72 n.16.[18]

- July 2006 Congressional testimony by the Executive Director of the Consumer Federation of America, *id*. ¶ 72, n.17[19], which stated: (a) "The simple fact is that,

[16] *Citing The Realtor Racket*, WALL ST. J. (Aug. 12, 2005), https://www.wsj.com/articles/SB112381069428011613.

[17] *Citing* Stephen Brobeck and Patrick Woodall, *How the Real Estate Cartel Harms Consumers and How Consumers Can Protect Themselves, CONSUMER FED'N OF AM.* 4 (June 2006), https://consumerfed.org/pdfs/Real_Estate_Cartel_Study061906.pdf.

[18] *Citing* Brobeck and Woodall, *How the Real Estate Cartel Harms Consumers*, at 4.

[19] Citing Testimony of Stephen Brobeck, *Residential Real Estate Brokerage Services: A Cockamamie System that Restricts Competition and Consumer Choice, CONSUMER FED'N OF AM.* 3-4 (July 25, 2006),

for decades, the dominant real estate firms and their trade associations have tried, with much success, to maintain high, uniform prices within different geographic areas;" (b) "[D]ominant sellers have largely succeeded in controlling prices and services;" and (c) "The National Association of Realtors responded that the industry was indeed competitive because there are so many licensed service providers.  On the contrary, the huge glut of these providers actually helps maintain the cartel and its control by dominant brokers."

Either collectively or individually, these publicly available statements—each affirmatively alleged and incorporated into the Amended Complaint, regarding the very alleged anticompetitive conduct at issue in this case, and at times using words such as "cartel" and "price-fixing scheme"—demonstrate that a reasonably diligent person would have known of any alleged claim and injury no later than 2007. Thus, Plaintiffs cannot rely on either the discovery rule or fraudulent concealment to toll their untimely claims. *See Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043-44, 1047-48 (7th Cir. 2019) (affirming dismissal on statute of limitations grounds where the publicly available records and documents were cited and "incorporated by reference in the pleadings," "did more than stir up the possibility of a legal action; they provided plaintiffs a detailed litigation roadmap"); *Tomlinson*, 682 F. Supp. 2d at 846-49 (granting Rule 12(b)(6) motion where news releases and articles "all considered . . . [were] more than sufficient" to put plaintiffs on inquiry notice).[20]

###### c. Identical Lawsuits Were Filed In 2019, And The DOJ Investigation Was Publicly Disclosed In 2019

Finally, the absolute latest that a reasonably diligent plaintiff would have "discovered"

---

https://consumerfed.org/wp-content/uploads/2006/07/7-25-06-Residential-Real-Estate-Brokerage_Testimony.pdf.

[20] *See also Roeder v. J.P. Morgan Chase & Co.*, 523 F. Supp. 3d 601, 622-23 (S.D.N.Y. 2021), *aff'd*, No. 21-552, 2022 WL 211702 (2d Cir. Jan. 25, 2022) (rejecting argument news articles were insufficient to provide notice of claim where plaintiffs relied on same articles in their complaint); *In re Int. Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 489 & n.38 (S.D.N.Y. 2017) ("[C]lass plaintiffs had every basis, in real time, to smell a rat" where complaint based "on voluminous news articles and other public sources, many published well before [limitations period ended].").

their claims and injury is March 2019, when the *Moehrl* action was filed, or, May 2019, when the DOJ's investigation into NAR's rules was publicly discussed in news articles. Both events occurred more than four years before this lawsuit was filed, and therefore Plaintiffs' claims that are subject to a statute of limitations of four years or less—which constitutes the vast majority of them, as outlined in Exhibit A—are time barred. As the Court is well aware, in March 2019, a nearly identical putative class action asserting federal antitrust claims concerning the NAR Rules that Plaintiffs challenge here was filed in this Court, which resulted in numerous articles.[21] *See Moehrl, et al. v. Nat'l Assoc. of Realtors*, No. 1:19-cv-01610 (N.D. Ill. Mar. 6, 2019). That case alone, and the national media attention that followed, was sufficient to put Plaintiffs on notice of their claims and alleged injury. *Cancer Found., Inc.*, 559 F.3d at 676 (affirming dismissal of untimely claims and rejecting fraudulent concealment where lawsuit provided notice).

Likewise, in May 2019, there were numerous public articles about the very same DOJ investigation that Plaintiffs ultimately argue put them on notice of their claims in November 2020.[22] *See* Am. Compl. ¶ 135. These disclosures of the DOJ's investigation would have—once again—put a reasonably diligent plaintiff on notice of their claims at the latest in May 2019. *See*

---

[21] *See* Aly J. Yale, *Lawsuit Alleges Collusion, Inflated Commissions Among Realtors*, FORBES (March 19, 2019), https://www.forbes.com/sites/alyyale/2019/03/19/lawsuit-alleges-collusion-inflated-commissions-among-realtors/?sh=5b1ff1f12a44; Brittany De Lea, *Real Estate Firms Accused of 'Conspiring' to Overcharge Home Sellers in Class-Action Suit*, Yahoo Finance (March 20, 2019), https://finance.yahoo.com/news/real-estate-firms-accused-apos-173722760.html; Kenneth R. Harney, *Class Action Suit Could Change Real Estate Commissions*, THE REAL DEAL REAL ESTATE NEWS (March 22, 2019), https://therealdeal.com/miami/2019/03/22/class-action-suit-could-change-real-estate-commissions/.

[22] *See* David McLaughlin and Patrick Clark, *U.S. Opens Antitrust Prove of Real Estate Brokerage Industry*, BLOOMBERG LAW NEWS (May 22, 2019), https://www.bloomberg.com/news/articles/2019-05-22/u-s-opens-antitrust-probe-of-real-estate-brokerage-industry; Joanne Cleaver, *Buying or selling a home? A New Lawsuit Could Change How Much You Pay the Realtor*, CHICAGO TRIBUNE (May 30, 2019), https://www.chicagotribune.com/real-estate/ct-re-national-association-realtors-lawsuit-0609-story.html; Jessica Guerin, *DOJ Demands to See CoreLogic's MLS Data in Antitrust Probe*, HOUSINGWIRE (May 30, 2019), https://www.housingwire.com/articles/49198-doj-demands-to-see-corelogics-mls-data-in-antitrust-probe/.

*Wabick*, 214 F. Supp. 2d at 875-76 (holding that disclosure of DOJ inquiry "would seem to have stimulated any non-ostrich . . . to pursue actively the possible existence of problems broadly suggested by those inquiries"); *Woori Bank*, 923 F. Supp. 2d at 497 (holding lawsuit alleging substantially similar facts placed plaintiff on notice of its own claims).

> **d.      The Complaint Shows Plaintiffs Did Not Act Diligently**

Plaintiffs allege that they "could not have discovered" the alleged unlawful conduct "by the exercise of due diligence," but fail to plead what diligence they undertook, if any, or how they could not have discovered their claims based on the very articles from 2005-2007 on which they now rely in the Complaint. *See, e.g.*, Am. Compl. ¶ 121, n.37, ¶ 126, n.40, 133. Plaintiffs' failure to do so is dispositive and precludes reliance on the discovery rule or fraudulent concealment. *Hudgins v. Board of Ed. of City of Chi.*, No. 23 C 218, 2023 WL 4303004, at *5 (N.D. Ill. June 30, 2023) (holding dismissal at pleading stage on limitations is infrequent, but warranted where plaintiff "has not described how she diligently pursued her rights"); *Greer v. Bank One*, No. 01 C 7352, 2002 WL 1732366, at *3 (N.D. Ill. July 25, 2002) (dismissing complaint where plaintiff "ha[d] alleged no facts whatsoever demonstrating his exercise of due diligence or to otherwise explain his failure to discover facts fraudulently concealed").

Plaintiffs' allegations that they did not have to be diligent because it was "reasonable" for them "not to suspect that Defendants were engaging in any unlawful anticompetitive behavior" because they are "unsuspecting home buyers" and "not well-versed with NAR's framework[,]" Am. Compl. ¶ 136, are conclusory and ignore Plaintiffs' inescapable burden to act diligently. *See Tartan Constr., LLC v. New Equip. Servs. Corp.*, No. 17-CV-5950, 2018 WL 4563079, at *3-4 (N.D. Ill. Sept. 24, 2018) (dismissing claims where plaintiff failed to explain "why its alleged facts could not have been discovered before" nor "conducted [an] investigation and made no inquiries"); *Olszewski v. Quicken Loans Inc.*, No. 12-CV-3131, 2013 WL 317060, at *3 (N.D.

Ill. Jan. 28, 2013) (dismissing claims where "plaintiffs fail to assert any facts supporting their conclusory contention that they could not discover . . . claim through the exercise of due diligence").

Plaintiffs also claim that they were ignorant because "the average home buyer does not appreciate that buyer-agent services cost them anything, let alone that Defendants actively conspire together." Am. Compl. ¶ 136. But that is not an acceptable excuse for their lack of reasonable diligence. *Tartan Constr., LLC*, 2018 WL 4563079 at *4 ("[T]he discovery rule does not permit plaintiffs to 'wait comfortably until advised by a lawyer that he or she can sue.'"). To accept Plaintiffs' argument would allow plaintiffs in nearly every antitrust case to claim ignorance as a reason for bringing untimely claims. As shown above, had Plaintiffs conducted even cursory diligence, they would have discovered their alleged injury and claims well before their statute of limitations periods expired.

### 3. The Complaint Establishes Plaintiffs Cannot Rely on Fraudulent Concealment

This Court previously held that to invoke tolling based on fraudulent concealment/equitable estoppel,[23] a plaintiff must show that "(1) the defendant exhibited deliberate, blameworthy conduct beyond the wrongdoing alleged, (2) the plaintiff's delay in filing suit was due to the plaintiff actually and reasonably relying upon the defendant's improper conduct, and (3) the plaintiff filed suit promptly after the conduct that resulted in the estoppel is removed." *Vergara*, 2018 WL 637824, at *2. The Complaint's allegations demonstrate that Plaintiffs cannot sufficiently invoke fraudulent concealment.

*First*, Plaintiffs have not alleged any actual concealment of the facts underlying their

---

[23] "Fraudulent concealment is a type of tolling within the doctrine of equitable estoppel." *In re Copper Antitrust Litig.*, 436 F.3d 782, 791 (7th Cir. 2006).

claims or injury by Defendants, and certainly not with the particularity required by Federal Rule of Civil Procedure 9(b).[24] *Whitley v. Taylor Bean & Whitacker Mortg. Corp.*, 607 F. Supp. 2d 885, 900 (N.D. Ill. 2009) (dismissing claims because "[a] plaintiff must plead with Rule 9(b) particularity the specific conduct of the defendant that entitles the plaintiff to toll the limitations period for fraudulent concealment"). Rather, the Amended Complaint itself establishes that the facts underlying Plaintiffs' alleged claims and injury were publicly available no later than 2007, thereby making their claims untimely. *See Cancer Found., Inc.*, 559 F.3d at 676 (rejecting fraudulent concealment where conduct relied on as the basis for equitable estoppel "hid nothing").

*Second*, the Complaint establishes the Plaintiffs' delay in filing suit, but not because they actually or reasonably relied on any conduct by Defendants. Although Plaintiffs contend that "Defendants actively concealed their conspiracy by, for example, prohibiting the disclosure of total commissions" and "encouraging brokers to represent to home buyers that their services are free of charge," Am. Compl. ¶ 139, they do not provide any facts about how Defendants in this action actively concealed anything, when they did so, or how Plaintiffs actually relied on that conduct. *See Vergara*, 2018 WL 637824, at *3 ("A court may apply the doctrine of equitable estoppel when there is a causal link between the defendant's relied upon conduct and the plaintiff's delay in filing suit."). Plaintiffs instead merely rely on conclusory group pleading allegations that lump all Defendants together, and otherwise allege that certain conduct is

---

[24] Although some courts in this Circuit have held that a plaintiff need not comply with Rule 9(b) when invoking fraudulent concealment, where, as here, Plaintiffs have chosen to attempt to plead fraudulent concealment, they must do so in accord with Rule 9(b). *See Greer*, 2002 WL 1732366 at *3 ("A complaint should distinctly state what the discovered fraud actually was and when the plaintiff discovered it, so that the Court may evaluate whether he could have discovered it through the exercise of due diligence."). Failing to require compliance with Rule 9(b) would ignore the plain language of the rule and make it superfluous.

inherently self-concealing. But the Amended Complaint itself establishes that the very issues that Plaintiffs contend were concealed or hidden were publicly available via NAR Rules and the subject of numerous publications dating back to at least 2005. *See, e.g.*, Am. Compl. ¶ 121 n.37, ¶ 126 n.40. Thus, it begs the question of how anything was concealed from Plaintiffs, let alone fraudulently concealed, when the very basis of their Complaint was publicly available nearly twenty years before they filed suit.

Finally, the Amended Complaint also demonstrates that Plaintiffs did not file this action "promptly after the conduct that resulted in the estoppel [was] removed." *Vergara*, 2018 WL 637824, at *2. Plaintiffs concede that they were on notice of their claims and injury in at least November 2020, Am. Compl. ¶ 135, and as the Court is aware, similarly-situated plaintiffs, on behalf of the same class and with the same counsel, sued other defendants in *Batton I* over three years ago, but yet waited until November 2023 to sue the Defendants in this action. Thus, Plaintiffs did not act "promptly" after they concede they became aware of their claims and Defendants' alleged misconduct. Plaintiffs' failure to act for three years supports that Plaintiffs cannot invoke estoppel based on fraudulent concealment.

## V.     Plaintiffs Also Fail To State A Claim Under Certain State Laws On A State-By-State Basis[25]

### A.     Plaintiffs Fail To State A Claim Under Any Tennessee Law

Plaintiffs agreed in *Batton I* that they did not have viable claims under Tennessee law and

---

[25] Separate from the jurisdictional issue raised above, Plaintiffs do not have standing to bring many of the state law claims they assert, as they are not residents of those states and were not personally injured in those states. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (stating that a plaintiff must "personally have been injured, not that injury has been suffered by other, unidentified members of the class"). Defendants recognize, however, that this Court addressed this issue in its recent motion to dismiss ruling in *Batton I. Batton I MTD Order* at *2-4. In the interests of judicial economy, Defendants incorporate by reference the arguments the *Batton I* defendants made on this issue, but will not re-brief the issue here. Similarly, Defendants maintain that Plaintiffs have failed to properly allege claims under any state laws. Here too, however, Defendants recognize that the Court has already addressed claims under a number of those state laws in *Batton I*, *Batton I MTD Order* at *8-9, and thus do not re-brief

voluntarily dismissed them, yet inexplicably raise them again here. *Batton I MTD Order*, 2024 WL 689989, at *8. These claims should be dismissed again. Plaintiffs also fail to state a claim for unjust enrichment in Tennessee, which requires that a "plaintiff must further demonstrate that he or she has exhausted all remedies against the person with whom the plaintiff enjoyed privity of contract." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). Nor does Tennessee permit claims which would expand Plaintiffs' recovery beyond their legal rights. *See Craft v. Forklift Sys., Inc.,* 2003 WL 21642767, at *3 (Tenn. Ct. App. July 14, 2003) ("[W]here the remedies available to a litigant are circumscribed by the boundaries drawn 'at law,' . . . principles of equity cannot create rights outside those boundaries."). Plaintiffs' Tennessee unjust enrichment claim should be dismissed because the Complaint does not plead that any Plaintiff exhausted remedies against the person with whom Plaintiff enjoyed privity of contract—the home seller or the buyer broker. And to permit an unjust enrichment claim when Plaintiffs' Tennessee antitrust and consumer protection claims fail, would "create rights outside [legal] boundaries." *See id.* Accordingly, the Court should dismiss all three of Plaintiffs' Tennessee state-law claims.

> **B.      Plaintiffs Are Barred From Pursuing Certain Claims As Class Actions**

Plaintiffs cannot bring class action claims under the Illinois Antitrust Act, the Montana Consumer Protection Act, or the South Carolina Unfair Trade Practices Act, as all three bar indirect purchaser class actions.

Under the Illinois Antitrust Act, 740 ILCS 10/7(2), "no person shall be authorized to maintain a class action in any court of this State for indirect purchasers asserting claims under this Act, with the sole exception of this State's Attorney General[.]" The majority of federal

---

arguments relating to those state laws here. Rather, Defendants adopt the arguments made by the defendants in *Batton I. Batton I MTD Order* at *8-9.

courts have held that this state procedural rule controls as it is "part of a State's framework of substantive rights or remedies" pursuant to *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 419 (2010). *See In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 723 (N.D. Ill. 2016) (dismissing Illinois antitrust claim based on *Shady Grove*); *Staley v. Gilead Scis., Inc.*, 446 F. Supp. 3d 578, 624-26 (N.D. Cal. 2020) (same).

Montana's and South Carolina's consumer protection statutes also expressly bar class actions. Mont. Code Ann. § 30-14-133(1) ("a consumer . . . may bring an individual action but not a class action"); S.C. Code Ann. § 39-5-140(a) ("Any person . . . may bring an action individually, but not in a representative capacity, to recover actual damages."). And courts have determined that these provisions "reflect a substantive policy choice" barring plaintiffs in federal courts from pursuing class claims. *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 843-44 (E.D. Pa. 2019) (dismissing Montana and South Carolina consumer protection claims). Thus, this Court should dismiss Plaintiffs' Illinois antitrust claim and Montana and South Carolina consumer protection claims with prejudice.

## C. Plaintiffs Are Barred From Bringing Certain Antitrust Claims Under *Illinois Brick*

As this Court already held in *Batton I*, home buyer plaintiffs, such as Plaintiffs here, are indirect purchasers under antitrust laws. *Batton I MTD Order* at *10. As a result, an indirect purchaser may only pursue monetary damages for state antitrust claims in states that have enacted an *Illinois Brick* repealer statute. *Id.* at *6, n.4 (discussing that an indirect purchaser may recover damages only under the laws of states that have passed a "so-called *Illinois-Brick* repealer statute[]") (internal quotations omitted). As indirect purchasers, Plaintiffs are barred from bringing antitrust claims in Connecticut, Florida, and Missouri, as these states have not chosen to repeal *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977). Other states—Maryland, New

Hampshire, and Utah—enacted *Illinois Brick* repealer statutes partway through the alleged class period, and Plaintiffs are barred from bringing claims for damages before the date of those enactions.

Connecticut has not passed an *Illinois Brick* repealer statute, and the Connecticut Supreme Court has held that "an indirect purchaser may not recover under the [Connecticut] Antitrust Act." *Vacco v. Microsoft Corp.*, 793 A.2d 1048, 1061 (Conn. 2002). Similarly, a heavily-cited Florida appellate court decision ruled that "Florida adheres to the 'direct purchaser' rule enunciated in *Illinois Brick*" and dismissed claims from a putative class. *Mack v. Bristol-Myers Squibb*, 673 So.2d 100, 102 (Fla. Dist. Ct. App. 1996); *accord In re Broiler Chicken Antitrust Litig.*, 290 F. Supp. 3d 772, 819 (N.D. Ill. 2017) (citing *Mack* to assert that "Florida law prohibits claims for damages by indirect purchasers under its antitrust statute").

Missouri's Antitrust Law has a provision that requires its antitrust statute to be construed "in harmony with ruling judicial interpretations of comparable federal antitrust statutes." Mo. Rev. Stat. § 416.141. Courts have interpreted this harmonization provision to bar claims by indirect purchasers. *In re Hard Disk Drive Suspension Assemblies Antitrust Litig.*, 19-md-02918-MMC, 2021 WL 4306018, at *22 (N.D. Cal. Sept. 22, 2021) (citing *Ireland v. Microsoft Corp.*, 2001 WL 1868946, at *1 (Mo. Cir. Ct. January 24, 2001)); *accord Hamilton v. Spencer*, 929 S.W. 2d 762, 767 (Mo. Ct. App. 1996).

Finally, certain state claims are barred prior to enaction of repealer statutes. Maryland did not pass an *Illinois Brick* repealer statute until May 27, 2017. Md. Code Ann. § 11-209(b). The law contains no retroactivity provision, and Maryland courts had held pre-amendment that the statute followed *Illinois Brick*. *Davidson v. Microsoft Corp.*, 792 A.2d 336 (2002). Thus, until the statute was amended, "indirect purchasers could not get damages under Maryland law."

*Staley*, 446 F. Supp. 3d at 629-30. Similarly, New Hampshire and Utah did not enact repealer statutes until 2008 and 2006, respectively. *See GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 842 (E.D. Mich. 2018) (confirming that *Illinois Brick* repealer statutes were not in effect in New Hampshire until January 1, 2008 and in Utah on May 1, 2006, and, therefore, "these enactments operate to limit [plaintiff's] recovery under the antitrust laws of New Hampshire and Utah to the damages resulting from Defendants' alleged anticompetitive activities that occurred on or after the effective dates of these *Illinois Brick* repealer provisions").

Therefore, the Court should dismiss outright Plaintiffs' antitrust claims under Connecticut, Florida, and Missouri law, and should dismiss their Maryland, New Hampshire, and Utah antitrust claims to the extent damages are claimed prior to the date of enactment of the *Illinois Brick* repealer statute in each state.

**D.     Plaintiffs Have Failed To State Consumer Protection Claims for States That Require Deceptive Practices**

In *Batton I*, the Court dismissed the plaintiffs' Kansas Consumer Protection Law claim because Kansas law requires more than just anticompetitive conduct, such as fraud or deception, and plaintiffs failed to allege that such conduct was done and directed at plaintiffs. *See Batton I MTD Order* at *9. Plaintiffs reallege it here but again fail to make the requisite fraud or deception allegations; thus it should again be dismissed with prejudice.

The Court should also dismiss Plaintiffs' Colorado and Pennsylvania consumer protection claims on similar grounds. Plaintiffs cite the catch-all provision of the Colorado Consumer Protection Act, Colo. Rev. Stat. § 6–1–105, which lists over 70 forms of deceptive trade practices. But courts have "refrain[ed] from adopting any broader construction of the CCPA that would sweep in anticompetitive conduct." *In re HIV Antitrust Litig.*, No 19-cv-02573-EMC, 2023 WL 3006572, at *1-2 (N.D. Cal. Apr. 18, 2023) (internal quotations omitted)

(collecting antitrust cases dismissing Colorado consumer protection claims). Dismissal is supported by "the structure of the statute" and the fact that there are "no Colorado cases holding that the subsection (rrr) or any other provision of the CCPA is meant to cover anticompetitive conduct." *Id.* Courts have similarly refused to extend Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL")'s catch-all provision to anticompetitive conduct, because of its "plain text requiring fraudulent or deceptive conduct." *Id.* at *4; *see also Anadarko Petroleum Corp. v. Commonwealth*, 206 A.3d 51, 60-61 (Pa. Commw. Ct. 2019)*, aff'd in part, rev'd in part by* 247 A.3d 934 (Pa. 2021) (rejecting a UTPCPL claim based solely on anticompetitive conduct while allowing a claim based on unfair *and* deceptive conduct to proceed). Thus, Defendants request that Plaintiffs' Colorado and Pennsylvania consumer protection claims also be dismissed with prejudice.

> **E.      Florida, Virginia, And Iowa's Consumer Protection Laws Exempt Transactions Involving Real Estate Licensees Such As Defendants**

Florida's, Virginia's, and Iowa's consumer protection laws exempt transactions involving real estate licensees and, therefore, do not apply to the service of brokering a deal for the purchase of a home as alleged by Plaintiffs.

Indeed, these states' consumer protection statutes expressly exempt real estate brokers. *See* Fla. Stat. Ann. § 501.212(6) (exempting "[a]n act or practice involving the sale, lease, rental, or appraisal of real estate by a person licensed, certified, or registered pursuant to [the "Real Estate Brokers, Sales Associates, Schools, and Appraisers" chapter]"); *see also Naples Motorcoach Resort Homeowners Ass'n, Inc. v. JG&M Props., LLC*, 363 So. 3d 1184, 1189 (Fla. Dist. Ct. App. 2023) (concluding that, "akin to a regulatory scheme governing construction and condominiums, the prohibition on collecting a commission fee as a broker without a license . . . is not the type of statutory scheme which is encompassed under [Florida's] scope of consumer

protection or prevention of unfair or deceptive trade practices"); *see also* Va. Code Ann. § 59.1-199(6) ("Nothing in this [Virginia Consumer Protection Act] chapter shall apply to: Real estate licensees who are licensed under Chapter 21 (§ 54.1-2100 et seq.) of Title 54.1"—governing "Regulation of Real Estate Brokers, Salespersons and Rental Location Agents"); Iowa Code Ann. § 714H.4(1)(a)(4) (exempting transactions involving "[p]ersons . . . licensed . . . under chapter[] . . . 543B[,]" governing "Real Estate Brokers and Salespersons"). As the allegations in the Complaint are solely related to the service of brokering a deal for the purchase of real estate by real estate licensees, the activity complained of is expressly exempted by Florida's and Virginia's consumer protection laws. *See, e.g.*, Am. Compl. ¶¶ 1, 4, 10, 12.

Moreover, Florida, Virginia, and Iowa courts have repeatedly determined that their consumer protection laws do not apply to an entity that falls within one of the exempt categories of businesses. *See, e.g.*, *Hotchkiss v. Blue Cross & Blue Shield of Fla., Inc.,* 277 So. 3d 760, 762 (Fla. Dist. Ct. App. 2019) (affirming dismissal of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") claim against defendant insurer because "the statutory language contained in FDUTPA . . . states that FDUTPA does not apply to any person or activity regulated by the Office of Insurance Regulation") (citing Fla. Stat. Ann. § 501.212(6)); *Antoine v. State Farm Mut. Auto. Ins.*, 662 F.Supp.2d 1318, 1326 (M.D. Fla. 2009) (dismissing FDUTPA claim because "no cause of action may be maintained against [an insurance company] under the [FDUTPA]"); *see also Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 414-15 (4th Cir. 2015) (affirming dismissal of Virginia Consumer Protection Act ("VCPA") claim against defendant because "the VCPA does not apply to 'mortgage lenders'") (citing Va. Code Ann. § 59.1–199(D)); *Buford v. Ocwen Loan Servicing, LLC*, No. 2:18CV154, 2018 WL 6790656, at *11-12 (E.D. Va. Nov. 2, 2018), *report and recommendation adopted*, No. 2:18CV154, 2018

WL 6617646 (E.D. Va. Dec. 18, 2018) (surveying cases dismissing VCPA claims *with prejudice* against "mortgage lenders" based on applicability of exemption) (citing *Farley v. Bank of Am., N.A.*, No. 3:14-CV-568, 2015 WL 3651165, at *1, *6 (E.D. Va. June 11, 2015), *aff'd*, 615 F. App'x 804 (4th Cir. 2015) (dismissing with prejudice VCPA claim against Bank of America because "[t]he Complaint involves BANA, which is a bank," and the "VCPA explicitly states that it does not apply to banks")); *Nsheiwat v. Am. Fam. Mut. Ins. Co.,* SI, No. 321CV00068JAJSBJ, 2021 WL 8895035, at *7 (S.D. Iowa Nov. 22, 2021) (dismissing Iowa Consumer Frauds Act claim "because § 714H.4 expressly excludes . . . '[m]erchandise offered or provided by . . .  Insurance companies subject to Title XIII'"); *Butts v. Iowa Health Sys.*, 863 N.W.2d 36, *9 (Iowa Ct. App. 2015) (observing propriety of dismissal of consumer fraud claims predicated on transactions that do not fall under Iowa's "Consumer Frauds Act [], by its own terms, to the defendants and the services provided"—such as merchandise offered by licensed health care facilities and physicians) (citing Iowa Code § 714H.4(1)(a)). Against this backdrop, it cannot be credibly disputed that Plaintiffs' claims brought under Florida, Virginia, and Iowa's consumer protection laws must be summarily dismissed.

Accordingly, the Court should dismiss with prejudice Plaintiffs' claims brought under Florida's, Virginia's, and Iowa's consumer protection laws.

## VI.     Dismissal With Prejudice Is Warranted Because Amendment Would Be Futile

Plaintiffs already had the opportunity to review one round of Defendants' motions to dismiss and attempt to add allegations to strengthen their claims. Instead, they filed an Amended Complaint that still fails to correct the deficiencies Defendants (and this Court in *Batton I*) previously raised. "Leave to amend need not be granted . . . if it is clear that any amendment would be futile." *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013). As indirect purchasers of buyer-brokers' services, Plaintiffs have no standing to seek injunctive relief under the

Sherman Act because more directly injured parties are seeking the same relief in a parallel case. *See supra* Sec. I. Plaintiffs' state law claims also fail because they are untimely. *See supra* Sec. IV. Moreover, because their entire pleading is based on a public "agreement" that occurred in 1996, *see supra* Sec. IV, nothing Plaintiffs say can change the fact that their claims are untimely. Thus, amendment would be futile.

### CONCLUSION

For the foregoing reasons, the undersigned Defendants respectfully request that the Court dismiss Plaintiffs' Complaint with prejudice.

Respectfully submitted,

Dated: June 21, 2024

*/s/ Chahira Solh*

Chahira Solh (admitted *pro hac vice*)
Daniel A. Sasse (admitted *pro hac vice*)
Eric Fanchiang (admitted *pro hac vice*)
**CROWELL & MORING LLP**
3 Park Plaza, 20th Floor
Irvine, CA 92614
Telephone: (949) 263-8400
csolh@crowell.com
dsasse@crowell.com
efanchiang@crowell.com

Sima Namiri-Kalantari (admitted *pro hac vice*)
**CROWELL & MORING LLP**
515 S. Flower Street, 41st Floor
Los Angeles, CA 90071
Telephone: (213) 622-4750
snamiri@crowell.com

*Attorneys for Compass, Inc.*

*/s/ James A. Morsch*

James A. Morsch (#6209558)
**SAUL EWING LLP**
321 N. Clark, Suite 4200
Chicago, IL 60601
(312) 876-7866 (phone)
jim.morsch@saul.com

Francis X. Riley, III (admitted *pro hac vice*)
**SAUL EWING LLP**
650 College Road East
Suite 4000
Princeton, NJ 08540
(609) 452-3142 (phone)
francis.riley@saul.com

*Attorneys for eXp World Holdings, Inc.*

/s/ James D. Lawrence

James D. Lawrence (admitted *pro hac vice*)
**BRYAN CAVE LEIGHTON PAISNER LLP**
1200 Main St., Suite 3800
Kansas City, MO 64105
Telephone: (816) 374-3200
Email: jim.lawrence@bclplaw.com

Timothy R. Beyer (admitted *pro hac vice*)
Bryan Cave Leighton Paisner LLP
1700 Lincoln Street, #4100
Denver, CO 80203
Telephone: (303) 866-7000
Email: tim.beyer@bclplaw.com

Lindsay Sklar Johnson (admitted *pro hac vice*)
**BRYAN CAVE LEIGHTON PAISNER LLP**
1201 W. Peachtree St., N.W., 14th Floor
Atlanta, GA 30309-3471
Telephone: (404) 572-6600
Email: lindsay.johnson@bclplaw.com

Emilee L. Hargis, IL #6325656 (admitted *pro hac vice*)
**BRYAN CAVE LEIGHTON PAISNER LLP**
211 N. Broadway
St. Louis, MO 63102
Telephone: (314) 259-2028
Email: emilee.hargis@bclplaw.com

*Attorneys for United Real Estate Holdings, LLC d/b/a United Real Estate Group*

/s/ Dylan I. Ballard

Michael W. Scarborough (admitted *pro hac vice*)
Dylan I. Ballard (admitted *pro hac vice*)
**VINSON & ELKINS LLP**
555 Mission Street, Suite 2000
San Francisco, CA 94105
Telephone: (415) 979–6900
mscarborough@velaw.com
dballard@velaw.com

Adam L. Hudes (admitted *pro hac vice*)
Stephen M. Medlock
**VINSON & ELKINS LLP**
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
Telephone: (202) 639–6500
ahudes@velaw.com
smedlock@velaw.com

*Attorneys for Weichert Real Estate Affiliates, Inc., d/b/a/ Weichert Realtors*

## CERTIFICATE OF SERVICE

I hereby certify that on June 21, 2024, a true and correct copy of the foregoing document was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Chahira Solh*
Chahira Solh
*Attorney for Defendant Compass, Inc.*